## JOHNSON ET AL. V. RICHARDSON.

1. RESULTING TRUST: *Proof of.*
   To establish a resulting trust by parol, the evidence must be full, clear and convincing.

2. HEALING ACTS: *Power of Legislature to pass.*
   Our Constitution does not prohibit retrospective legislation; and in the absence of such prohibition, healing laws may be passed confirming previous conveyances and curing defects which arise out of some technical informality in their execution or acknowledgment.

3. HEALING STATUTES: *Acknowledgments: Dower.*
   By the curing acts of March eighth and fourteenth, 1883, the Legislature intended to cure defects in the previous acknowledgments of the relinquishments of dower. It had the power to do so. It was no invasion of vested rights, but was giving to the acts of the relinquishers the effect they intended, but which, from mistake or accident, had not been effected.

4. STATUTES: *Healing, affect pending suits.*
   The institution of a suit does not entitle a party to any particular decision. The cause must be determined according to the law in force when it is decided.

APPEAL from *Jefferson* Circuit Court in Chancery.
Hon. F. J. WISE, Special Judge.

*W. P. & A. B. Grace* for appellants.

1. Richardson was never seized of an estate of inheritance in the land, but merely held the naked legal title in trust; and a widow is not entitled to dower in a trust estate. (*Sugd. on Vend., 8th Am. ed., p. 700; Bisp. Eq., sec. 80; Story Eq. Jur., sec. 1201; Perry on Trusts, secs. 98, 126; 20 Ark., 272; 4 Kent Com., *p. 43–50; 1 Wash. R. P., p. 161–2; 31 Ark., 580.*) Parol testimony is admissible to establish a resulting trust, in contradiction to the terms of a deed, even after the death of the nominal purchaser.

*Bisp. Eq., sec. 83; 9 Ark., 527; 42 Ib., 511; 29 Ib., 67; 39 Ib., 313.*

2. The mere recitals of fact in a deed may be disputed, though parol testimony cannot be received to contradict or vary its legal effect, yet it "is admissible to explain or even disprove the consideration or mere recitals of fact." *18 Ark., 79; Bisp. Eq., sec. 79.*

3. The joining in the deed by appellee was sufficient without any formal relinquishment of dower (*41 Ark., 101*), and the defective acknowledgment was healed and cured by *acts of March 8 and 14, 1883, pages 101 and 107.*

The bringing of a suit vests in a party no right to a particular decision, and the case must be decided by the law as it stands, not when the suit was brought. (*Cooley Const. L., p. 381.*) Nor does the healing act divest any vested right. (*Cooley C. L., p. 377.*) A party can have no vested right to do wrong, nor do courts regard rights as vested contrary to the justice of the case. (*16 Mass., 245; 3 Dutch., 197.* See, also, *61 Penn. St., 337; 15 Serg. & R., 72; 8 Pet., 88; 2 Ib., 380; 16 Serg. & R., 35; 6 Gill. & J., 461; 30 Cal., 139; 17 Ind., 41; Cooley C. L., 371–2; 1 Kent Com., p. 456; 27 Ark., 26; 28 Con., 97; 1 Watts, 330; 3 Dall., 386.*

The cases in 20 Ark., 508; 42 Ark., 141; Scott v. McKenzie, 43 Ib., are not applicable, because in the first case the act did not pretend to validate defective acknowledgments; in the second the deed had been *invalidated* before passage of the act; and in the third there was *no* acknowledgment.

*M. L. Bell* for appellant.

There is no dower in a trust estate. (*31 Ark., 580.*) Parol testimony admissible to explain the consideration of

a deed. (*18 Ark., 65; Ib., 34.*) Argues upon and explains the various transactions and testimony, and submits that, by express agreement and contract, Richardson was a trustee for Johnson.

*N. T. White* for appellee.

Every writing in existence, executed by either of the parties at the time, and especially the deed of release to Richardson, shows that Richardson purchased the lands, paid his own money and held them in his own right and not as trusts. The only safe and reliable way of treating instruments, after the lapse of so long a time, is to let the instrument itself speak, rather than trust to the treacherous memory of man. Man may forget, but writing cannot change. (*13 Ark., 593; 15 Ib., 543; 16 Ib., 519; 20 Ib., 293; 21 Ib., 69.*) By the release from Johnson to Richardson the *entire* title passed, purged of any trust, if any existed, and the dower right of appellee attached. (*1 Scribner on Dower, pp. 113–14; Gantt's Dig., sec. 2210; 31 Ark., 577; 5 Ark., 608; 8 Ib., 9.*) The acknowledgment failing to show privy examination in the absence of the husband, fatally defective. *Gantt's Digest, sec. 849; 39 Ark., 434; 20 Ark., 190; 27 Ib., 339; 33 Ib., 432; 29 Ib., 650.*

The acts of 1883, p. 107 and 129, could not cure it, nor divest the widow's vested right to dower after it attached. On the death of the husband the dower right is *absolute*—a vested right. (*31 Ark., 576; 5 Ib., 608; 18 Ib., 440; 26 Ib., 650; 23 Ib., 263.*) This right the Legislature could not divest. *20 Ark., 508; 41 Md , 633; S. C. 20 Am. R., 76; 12 N. Y., 202; 46 Me., 9; 17 Iowa, 517; 9 Ind., 57; 14 Mich., 191; Cooley Cons. Lim., 3d ed., side p. 361; Const. Ark., art. 2, secs. 21 and 22.*

SMITH, J.   This is a suit by Mrs. Richardson for dower in certain lands, and the decree below was in her favor. She is the widow of one Benjamin F. Richardson, who died in 1881.   She and the said Benjamin F. were married in September, 1856.   In October, 1856, Benjamin F. Richardson, jointly with William E. and Henry C. Ashley, purchased a tract of land containing eight hundred acres, for the sum of twenty thousand dollars, all on credit; and for the purchase money they made their three notes in favor of James H. Scull, the vendor, for $6,666.66 each, with eight per cent. interest, payable on January 1, 1858, 1859 and 1860, and the said Scull executed to them his bond for title.   A short time after this purchase the Ashleys and Richardson divided the lands equally between them, and marked the division line with a stone.   It was the understanding that the Ashleys were to pay one-half of the purchase money, and Richardson the other half.

In the division of the lands, the Ashleys received, as a part of their half, the lands in controversy in this suit, and they, immediately after the division of the same, entered into the possession of their part, and Richardson entered into possession of his part.

At the close of the war two of the purchase notes had been paid, but one of the notes, with accrued interest, remained unpaid, and suit was brought upon the same in the Jefferson Circuit Court, and a decree of foreclosure rendered against Richardson and the Ashleys, and the lands ordered sold to pay the decree.

This decree was rendered in favor of Mildred Scull, administratrix of James H. Scull, in December, 1868, for $12,211, and M. L. Bell was appointed a commissioner of the court to carry into effect the decree.

It was agreed that the unpaid part of the purchase money for which the decree was rendered was due and

owing by the Ashleys ; that Richardson had fully paid his half of the purchase money ; but before he could get title to his half it was necessary to pay off the decree, as it was a lien upon his part, as well as on the Ashley part of the land.

In February, 1869, the commissioner advertised the entire eight hundred acres of land for sale under the decree, but afterwards made an agreement with Richardson and Henry C. Ashley that, if they would pay $3,000 on the decree he (Bell) would wait until fall for the balance.

Ashley went to Little Rock to arrange this payment, and on February 10, 1869, the day fixed for the sale, Richardson received a telegram from S. H. Tucker that his (Richardson's) draft for $3,000 would be honored. Richardson declined to give this draft, as the debt was Ashley's, and he feared being made liable if he gave the draft, but after repeated assurances from Bell he was induced to give the same, and it was paid and the sale postponed.

It appears about this time that Henry C. Ashley agreed with the appellant, Samuel H. Johnson, that if he (Johnson) would pay off the balance of the decree and secure to him (Ashley) the 8 72-100 (eight and seventy-two one hundredths) acres on which the gin-house was situated, he could take the balance of the land, and it appears that Richardson consented to this arrangement. It was thought best the lands should be sold under the decree, as there were minor children of Scull who could only make deeds by order of the court.

On the fourth day of October, 1869, Bell, as commissioner, sold the lands at public auction, and the same were purchased by Benjamin F. Richardson, and the commissioner's report and deed were confirmed by the court.

It is claimed on the one side that Johnson paid the purchase money for the lands to the commissioner, while on

24

the other side it is contended that Richardson paid the same. One thing, however, is certain, that Richardson was forced by operation of law to pay the draft he gave for $3,000, with accrued interest, which was a part of the purchase money.

On the fifth day of December, 1870, Johnson, by deed of release, re-conveyed back to Richardson all right, title or claim to the lands in controversy, which he had obtained by his previous contract with either Ashley or Richardson. And on the eleventh day of October, 1871, Richardson and wife undertook to convey back to appellants the lands in controversy.

The acknowledgment of this last mentioned deed was fatally defective, as far as the relinquishment of dower is concerned, because the certificate of the officer before whom it was taken fails to show the privy examination of the wife.

1. RESULT-
ING TRUST:
Proof of.
It was earnestly contended that B. F. Richardson was never seized of an estate of inheritance in the land, and that he held the legal title in trust for Johnson. To establish a resulting trust by parol the evidence must be full, clear and convincing. Here all the writings that were produced tended to repel any presumption of a trust. And even if a trust once existed, the subsequent release by the alleged *cestui que trust* seems to be irreconcilable with the theory of the appellants. That deed recites that Richardson did make a verbal agreement with Johnson to sell and convey to him the lands in controversy for the consideration and price of $8,000, but that Johnson is unable and unwilling to pay the money, and desires to rescind; therefore, in consideration of $1,000 paid to him, he releases Richardson from the performance of any part of said agreement, quit-claims to Richardson whatever right he may have acquired to the land by virtue of said agree-

Johnson et al. v. Richardson.

ment, and acknowledges himself to be Richardson's tenant. It is safer, after the lapse of a long time, to let instruments of writing speak for themselves, and to gather the meaning of the parties to them from their contents, rather than from the uncertain memory of witnesses. We, therefore, incline to think that Mrs. Richardson is entitled to dower, unless the defect in her acknowledgment has been cured by the legislation on this subject that was had in the year 1883.

By the act approved March 8, 1883, for " the better quieting of titles," it was provided :

" Section 6. That all deeds and other conveyances recorded prior to the first day of January, 1883, purporting to have been acknowledged before any officer, and which have not heretofore been invalidated by any judicial proceeding, shall be held valid to pass the estate which such conveyance purports to transfer, although such acknowledgment may have been on any account defective." *Pamphlet Acts 1883, page 107.*

And on the fourteenth day of March, 1883, the following statute was enacted :

" Section 1. All conveyances and other instruments of 2. HEALING ACTS. writing authorized by law to be recorded, or which have heretofore been recorded in any county in this State, the proof of execution whereof is insufficient because the officer certifying such execution omitted any words in his certificate  *  *  *  shall be as valid and binding as though the certificate of acknowledgment or proof of execution was · in due form, and bore proper seal." *Pam. Acts 1883, p. 129.*

It is contended for appellee that these statutes are inoperative in the case at bar for two reasons :

First—Because the act was passed after this suit·was brought; and,

Second—Because to give them effect would be to deprive her of a vested right.

Johnson et al. v. Richardson.

<span style="font-variant: small-caps;">Affect ending suits.</span>  The first of these objections was answered in the case of *Green v. Abraham, 43 Ark.,* where it was explained that the institution of a suit does not entitle a party to any particular decision.

<span style="font-variant: small-caps;">Dower: Acknowledgment.</span>  There can be no doubt that the Legislature intended to cure just such defects as are disclosed by this record. The fact that conveyances executed by minors and insane persons are exempted from the operation of the act, while there is no similar saving clause in favor of married women, demonstrates that intention. The question is thus resolved into one of legislative power.

<span style="font-variant: small-caps;">Power of Legislature.</span>  Our Constitution does not prohibit retrospective legislation. And in the absence of such prohibition, it is settled by the vast preponderance of authority that healing laws may be passed, confirming previous conveyances, and curing defects which arise out of some technical informality in their execution or acknowledgment. The cases on this subject are collated in *Cooley's Constitutional Limitations, 4th ed., 460–79,* and in *2 Scribner on Dower, 2d ed., 375–88.* The case of *Grove v. Todd, 41 Md., 633; S. C., 20 Am. R., 76,* and of *Russell v. Rumsey, 35 Ill., 362,* deny that a release of dower, executed by a married woman, but so defectively acknowledged as to be inoperative, can be made valid by a subsequent statute, because this would be to take from the woman a vested right. But these cases are decided clearly against the current of authorities, and also, as we believe, against the better reason. Judge Cooley, in his work cited above, at page 471, says:

"The objection (depriving a party of vested rights) is more specious than sound. If all that is wanting to a valid contract or conveyance is the observance of some legal formality, the party may have a legal right to avoid it; but this right is coupled with no equity, even though the case be such that no remedy could be afforded the

other party in the courts. The right which the healing act takes away in such a case is the right in the party to avoid his contract—a naked legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect."

Accordingly he stated the correct doctrine to be, that when these acts go no further than to bind a party by a contract or conveyance which he has attempted to enter into, but which was invalid by reason of some personal inability on his part to make it, or through neglect of some legal formality, the question is one of policy and not of constitutional power. The parties to a deed and those who have succeeded to their rights with no greater equities, can have no vested right which grows out of the mistake of a public officer in certifying its acknowledgment.

*Mercer v. Watson, 1 Watts, 330,* affirmed on error, *8 Peters, 88,* is a remarkable illustration of this principle. A wife, in conjunction with her husband, had conveyed her lands ; but the deed was so defectively acknowledged as not to pass her estate. After her death her heirs recovered the lands and remained in possession for seventeen years, when the Legislature of Pennsylvania passed an act to cure all defective acknowledgments of this sort.

And it was held that the claimants under the deed were entitled, by virtue of the curative statute, to recover back the premises from the wife's heirs.

See, also, *Barnet v. Barnet, 15 S. & R., 72; Tate v. Stooltzfoos, 16 Ib., 35; Jackson v. Gilchrist, 15 Johns., 89; Raverty v. Fridge, 3 McLean, 230; Chesnut v. Shane, 16 Ohio, 599; Purcell v. Goshorn, 11 Ohio St., 641; Dentzell v. Waldie, 30 Cal., 139.*

In the case last cited, the court said :

" The act in question does not divest the plaintiff of her

title to the land in controversy. On the contrary, it gives effect to the contract made by her fairly and in good faith, by which she intended, but failed, to pass the title to another, merely because the legal forms were not observed. The same will which prescribed those forms has said that a non-compliance therewith shall be waived or excused, and the act held valid, notwithstanding, and we find no constitutional impediment in the way."

We do not mean to say that the Legislature could retroactively confer upon a married woman an authority which she did not previously possess, as was attempted to be done by the law which came before the court in *Shonk v. Brown, 61 Pa. St., 320.* Mrs. Richardson had the power all the time to relinquish her dower; she was restricted merely in the manner of its exercise. As the Legislature might have antecedently authorized her to exercise the power without an examination separate and apart from her husband, or without any examination at all, so it might subsequently remove any defect arising merely in the form of proceeding. And so far from this being an invasion of her vested rights, it is giving to her act the very effect which she intended, and which from mistake or accident has not been effected.

The law was in force when this cause was determined, and the Circuit Court erred in not applying it. Its decree is reversed and a decree will be entered here dismissing the complaint.