## HALL *v*. COX.

Opinion delivered June 24, 1912.

1. JUDGMENT—IMPEACHMENT FOR FRAUD.—A fraud which entitles a party to impeach a judgment must be a fraud extrinsic of the matter tried in the cause, and must not consist of any false or fraudulent

act or testimony, the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment that is thus assailed. (Page 308.)

2. HUSBAND AND WIFE—CONVEYANCES BETWEEN—PRESUMPTION.—Where a husband purchases land with his own means and takes title in his wife's name, or expends money in improving her property, the law presumes that it was an advancement or gift. (Page 308.)

3. TRUST—RESULTING TRUST—SUFFICIENCY OF EVIDENCE.—To establish a resulting trust by parol, the evidence must be full, clear and convincing. (Page 311.)

4. ADMINISTRATION—JURISDICTION OF CHANCERY.—Proceedings for removing an administrator and setting aside a sale of personalty land an inventory of the administrator must be had in the probate court, and a court of chancery has no jurisdiction. (Page 313.)

Appeal from Sharp Chancery Court, Northern District; *George T. Humphries,* Chancellor; reversed in part.

### STATEMENT BY THE COURT.

This is a suit by the appellants as collateral heirs of S. Alice Cox against appellee to falsify and set aside certain settlements of the latter as administrator of the estate of S. Alice Cox, deceased.

It is alleged, among other things, that in 1904 the appellee, defendant below, "fraudulently caused to be allowed against the estate of S. Alice Cox, deceased, in his favor, a demand in the sum of $264, comprising the following items:

| | |
|---|---|
| Feb. 10, 1903—To funeral expenses | $100.00 |
| Dec. 28, 1903—To monument | 100.00 |
| Dec. 28, 1903—To base to monument | 10.00 |
| Jan. 10, 1904—To walling and improving grave | 50.00 |
| Jan. 10, 1904—To hauling monument | 4.00 |
| Total amount | $264.00 |

It is also alleged that defendant, on the 22d day of March, 1903, "fraudulently caused to be allowed by said probate court a false, fictitious and fraudulent claim against said estate in the sum of $1,210 for improvements falsely claimed to have been made on the farms and lands belonging to his said wife, described in said complaint." It also alleged that the claim was "stale and should not be enforced in a court of equity."

The complaint also set up that the defendant fraudulently obtained from the probate court an order directing him, as administrator, to sell certain lands for the purpose of paying debts of the deceased, S. Alice Cox; that the defendant fraudulently conducted the sale, setting forth specific acts alleged to constitute the fraud. The complaint then alleged that S. Alice Cox, deceased, was seized at the time of her death of the lands thus alleged to have been fraudulently sold, which are described.

Plaintiffs alleged that at the time of the death of S. Alice Cox they "became the owners and entitled to the possession of all the real, personal and mixed estate of the said S. Alice Cox, she having died without living issue and the plaintiffs being all her collateral heirs."

There were other allegations in the complaint as to the fraudulent obtaining of letters of administration and concealment of the personal property of the intestate, and the filing of fraudulent inventories of the personal property, all of which it is unnecessary to set forth. The complaint concluded with a prayer that "defendant's letters of administration be cancelled; that the sale of the personal property be held fraudulent and set aside; that the inventory be set aside for the same reason; that the order of the probate court approving the sale of the personal property be held void; that the account and allowance in the sum of $264 be held fraudulent and void and be set aside; that the allowance in the sum of $1,210 be set aside for the same cause and for laches; that the order of the probate court of March 19, 1907, authorizing and directing a sale of the lands for the payment of debts and the sale thereunder, be held void and of no effect for the fraud of said defendant in procuring it; that the title and possession of all the property of which said S. Alice Cox died seized be decreed to plaintiffs, and for all other proper equitable relief."

The answer of the defendant admitted that he had filed a claim against the estate in the sum of $264, as alleged; averred that he furnished the material and incurred the expense in the burial of his wife, as charged in his account, and that the monument charged for was not paid for out of the means of the deceased, but paid for out of his own means. He also admitted that he filed a claim in the sum of $1,210, and alleged

that it was allowed by the court. He admitted that on the 19th of March, 1907, he applied for and obtained an order of the probate court directing him, as administrator, to sell certain lands belonging to the deceased at the time of her death for the purpose of paying the debts probated against her estate; and he admitted that at the time of her death the said S. Alice Cox held the legal title to the lands in controversy.

He disclaimed any intention to perpetrate a fraud in his conduct as administrator in conducting the administration of the estate; alleged that he was lawfully married to the deceased, S. Alice Cox, and that children were born alive to them in lawful wedlock.

The other allegations of the answer consisted in denials of certain allegations of the complaint.

In an amended answer and cross complaint, the defendant set up that the legal title "to the 244.29 acres of land and town lots (which are described) were vested by deed in his wife, the said S. Alice Cox, at the time of her death," but alleged that she only held said legal title in trust for her husband, the defendant; that he purchased all of it, paid for it with his own money, and caused the legal title to be vested in her for his benefit and in trust for him, and that it was always understood by and between them that the property belonged to him, and that he managed and controlled it as his own. His answer and cross complaint concludes with a prayer that a decree be entered, "declaring a resulting trust in the lands in his favor and a divestiture of title out of the collateral heirs of S. Alice Cox, deceased, and vesting it absolutely in himself; or, if the evidence should not warrant this, that the court, by its decree, recognize his right of curtesy in the lands in controversy."

The plaintiffs answered the cross complaint of appellee, denying its allegations, and prayed that no resulting trust be declared, and that defendant's claim of curtesy in the lands be denied, and his cross complaint dismissed.

The court, after hearing the evidence in the case, which was voluminous, found that there was no illegality or fraud in the demand in favor of the defendant, F. M. Cox, in the sum of $264, allowed by the probate court; that the claim for

the sum of $1,210 was stale, barred by limitations and so tainted with fraud as to render the same void, and found for the plaintiffs on that allegation of the complaint.

In regard to the lands, the court found "that the defendant bought and paid the purchase money for all the lands in controversy, and in doing so became the equitable owner; that in taking deeds in the name of his wife she became a trustee for his benefit, and that a resulting trust should be declared and the deeds conveying the legal title to her should be cancelled, and the legal as well as the equitable title should be vested in defendant, F. M. Cox; and entered a decree accordingly.

The plaintiffs prosecute their appeal to reverse the rulings of the court in refusing to set aside the judgment of the probate court allowing judgment for the sum of $264 against the estate, and in declaring a resulting trust in favor of the defendant as to the lands.

*Joseph B. Judkins* and *Sam H. Davidson*, for appellants.

1. At the common law appellee was himself liable for the funeral expenses of his wife. 53 Ala. 89; 100 Cal. 345; 6 L. R. A. (N. S.) 917, and cases cited in note.

If the separate estate of deceased was liable for any part of the account of $264 it was for that part denominated "funeral expenses" only; but, if it was primarily liable, the husband, on account of his ultimate common-law liability, can not recover from the estate. 20 Man. Rep. 444. In any event but a small per cent. of the demand comes under the head of funeral expenses. Webster's Dict., "Funeral."

2. The burden of proof is on the party seeking to establish a trust. 10 Am. & Eng. Enc. of L. 29, 32; 44 Ark. 365; 48 Ark. 173. And the evidence must be full, clear and convincing. 44 Ark. 365, 370; 48 Ark. 174; 54 Ark. 99; 10 Am. & Eng. Enc. of L. 32, notes; 11 Ark. 82; 19 Ark. 39; 45 Ark. 472; *Id.* 481; 48 Ark. 169; 64 Ark. 115; 75 Ark. 446.

Where the husband purchases property and has title thereto conveyed to his wife, or expends money to improve her property, the law will presume that it was intended as an advancement or gift. No promise to repay the amount so expended will be presumed, nor that a trust was intended to be created

in his favor. 86 Ark. 451; 40 Ark. 62; 71 Ark. 377; 48 Ark. 17. The evidence to rebut the presumption of advancement must be as explicit as that required to establish a resulting trust. 41 W.. Va. 332; 56 Am. St. Rep. 837.

Wood, J., (after stating the facts). 1. The appellants contend that the allowance of $264 for funeral expenses, monument, etc., was not a proper charge on the estate of S. Alice Cox, deceased, and that the court erred in not setting aside such allowance. Conceding, without deciding, that this claim was not a proper charge against the estate, under the evidence there was no fraud practiced upon the court in the procurement of the judgment. The fraud, if any, consisted in the original cause of action only. It consisted in the appellee's presenting a claim for amounts which were false amounts, alleged to have been paid out by him for the various items mentioned in his account. These items might have been contested before the probate court and defeated there, or, if not, then by appeal. The question as to whether they were legal charges against the estate was one of law for the court to determine. It was not a fraud on the court to present such claim for allowance. A fraud that entitles a party to impeach a judgment "must be a fraud extrinsic of the matter tried in the cause. It must not consist of any false or fraudulent act or testimony, the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment that is thus assailed. It must be a fraud practiced upon the court in the procurement of the judgment." *Bank of Pine Bluff* v. *Levi,* 90 Ark. 166, and cases there cited. The court therefore did not err in refusing to set aside the allowance of $264, and its judgment as to this is affirmed.

2. The testimony of the appellee shows that he purchased in 1879 what is known as the Abernathy place. He and his deceased wife had decided before that time that they would raise no family; that if he died first she would be left alone, and if she died first he would be left alone; so she wanted the real estate made in her name to prevent having any trouble if she was left alone. She suggested that he keep an account of improvements, and that such account, with 10 per cent. interest added, be presented to the probate court against her estate, and he would be repossessed of the land. He exe-

cuted notes for the purchase money of $150 and $200, respect-ively, which were paid in part by doctor bills, and when the notes were paid the deeds were executed to his wife. He did not in-tend by this to make his wife a gift or advancement, and she so understood it. He bought the other lands, and in order to convey the title to Mrs. Cox he and she deeded them to a third party, who, in turn, deeded them back to Mrs. Cox.

The lots in Mammoth Spring were bought by Mrs. Cox with money collected from his book accounts. Mrs. Cox assisted him in practicing medicine. If he was absent, she would prescribe for any one coming in, and in the sickly part of the year she did considerable riding, visiting patients he could not visit. Where she was preferred in obstetrics, she would go. In the fall her accounts were added to his, but she didn't earn more than 50 per cent. of expenses.

He testified, on cross examination, that his contention now was that he bought all the land in controversy, and had the legal title thereto conveyed to his wife, not as a gift or advancement, but that in 1904, in a suit he brought against the collateral heirs of Mrs. Cox, he alleged in his complaint that the reason he had these deeds made to her was that she had a brother and sisters, and that at her death he wanted the land to go to them, but stated that the first reason was the true reason why he had the titles conveyed to her.

He stated that the advantage he derived from constituting his wife his trustee to hold the lands in controversy for him was "a little peace and quiet at home" by having her feel sure she would not lose the land. "We wanted peace and harmony, and I wanted the deed in her name because she wanted it."

In 1904 he brought suit against the collateral heirs of Mrs. Cox, praying that the deeds to her for the land in contro-versy be cancelled and title be vested in him; that he gave notice to take depositions April 28, 1904, at which time plain-tiff, Mrs. Hall, and her attorney appeared, and he caused to be served by David L. King, his attorney, a notice on Mrs. Hall and her attorney that he would abandon and dismiss the suit, which he did. But afterwards, on the 22d day of March, 1905, he filed his demand against the estate of deceased for $1,210 for improvements put on the land in controversy, making an affidavit at the time that the services charged were

actually rendered; that the charge did not exceed the amount allowed by law for similar services, and that the sum of $1,210 against the estate was then due and unpaid, and that, although the land was only held in trust by the deceased for his benefit, he filed that account aganist his wife's estate because she agreed to pay it, and he was to keep such account and present it to the probate court that he might get the legal title to his land again at the end of her trust. He stated that, although his wife only held the land in trust for him, she became responsible to him for the improvements he placed upon his own land by agreement and special contract between himself and his wife that he was to keep an account of all expenditures on the place that he might probate a claim and obtain legal possession of his land in the event that she died first. The rents and profits were to go to both of them, and it was necessary that these improvements be made to enhance the rental value of the land.

He further testified that on the 19th day of March, 1907, he filed his petition under oath, alleging that that sum of $1,456 had been allowed by the probate court of the northern district of Sharp County against the estate of S. Alice Cox, in his favor, and alleging that there were several tracts of land belonging to said estate which he desired sold to pay said debts; that he signed said petition and made oath before the clerk of said court that the facts stated in the petition were true; that he obtained an order to sell the lands on that petition, and offered them for sale; that when he swore in his application for letters of administration that the income of his wife's estate was $150 annually, he had reference to the income that arose from the land and stock she held a legal right to.

On redirect examination, he testified that the reason he dismissed his suit brought in chancery to have the legal title to some of the land in controversy divested out of the collateral heirs of Mrs. Cox and vested in himself was that he began that suit to get possession of his lands, having no thought in the least of any body objecting or interfering with his course, but when he saw them come with their attorney to oppose him he concluded the better plan was to dismiss that case and proceed as he had before intended by administering on the estate.

He further stated that the reason why he did not, in his administration, charge himself with rents, profits and income of the land was that the lands were his, and he supposed the proceeds of them were his. He commenced his administration on the 3d day of June, 1903, and filed suit in the chancery court the last of that year or first of 1904, and stated that he abandoned the contract with his wife as to the account and administration sale which he was to enforce, in case she died first, because he apprehended no trouble from any of the plaintiffs, and was told that the best and cheapest way to get title to the land was in chancery. He and Mrs. Cox knew she could make a will devising the land to him, which would take effect at her death, but he preferred to administer, as he would have to go through probate court any way.

The plaintiffs introduced in evidence warranty deed from Abernathy and wife, dated January 8, 1883, conveying to deceased S. A. Cox, 164 acres of land lying in Sharp County, and warranty deeds from Kufall, dated December 24, 1898, conveying certain land in Fulton County; also warranty deed of Mammoth Spring Improvement & Water Power Company, conveying to S. A. Cox the lots in Mammoth Spring. These deeds conveyed the lands in controversy.

"When a husband purchases property, and has it conveyed to his wife, or expends money in improving her property, the sum so expended will be presumed to be a gift. The law will not imply a promise on her part to repay the amount, nor will it raise a presumption that he intended thereby to create a trust in his own favor. Neither will there be a presumption that he intended thereby to repay a debt which he owed his wife." *Hamby* v. *Brooks*, 86 Ark. 448, 451.

Where a husband purchases land with his own money and takes the title in his wife's name, the presumption is that it was an advancement or a gift. *Milner* v. *Freeman*, 40 Ark. 62; *Bogy* v. *Roberts*, 48 Ark. 17; *Chambers* v. *Michael*, 71 Ark. 377.

In *Johnson* v. *Richardson*, 44 Ark. 365, speaking of the character of evidence required to prove a resulting trust, the court said: "To establish a resulting trust by parol, the evidence must be full, clear and convincing." This rule has often been announced by this court. *Tillar* v. *Henry*, 75 Ark.

446; *Camden* v. *Bennett,* 54 Ark. 115; *Crow* v. *Watkins,* 84 Ark. 169.

As early as 1850, in *Crittenden* v. *Woodruff,* 11 Ark. 82, this court announced that, although the authorities show that in a court of equity it is admissible to prove a trust in opposition to a deed or other written instrument, they are fully up to and distinct that the evidence offered for this purpose must be of so positive a character as to leave no doubt of the fact. In *Crow* v. *Watkins, supra,* the court announced that the evidence "must be of such clearness and certainty of purpose as to leave no well-founded doubt upon the subject."

It could serve no useful purpose to discuss the evidence in detail upon which the court declared a trust in favor of the appellee. It speaks for itself. Suffice it to say, it does not, in our opinion, meet the requirements of the rule above announced in any particular. The testimony is far from being satisfactory and convincing. The appellee assumed contradictory attitudes in reference to the lands in controversy. At one time he brings suit and in his complaint treated it as an absolute property in his wife, and then again he files an account for improvements made upon the property as the absolute property of the estate of his deceased wife, and then in his first answer in the present case he admits that at the time of his wife's death she held the legal title to all the lands and prayed for curtesy therein, and not until the amended answer and cross complaint was filed, seven years and seven months after the death of his wife, does he set up his present contention that the lands were held by her in trust for him. It was twenty-seven years from the date of the deed to one tract of land, nineteen years from the purchase of another tract, and twelve years from the purchase of another tract before any intimation is given that the lands were held in trust.

In *Johnson* v. *Richardson, supra,* it is said: "It is safe after the lapse of a long time to let instruments of writing speak for themselves and to gather the meaning of the parties from their contents, rather than from the uncertain memory of witnesses."

The testimony, in our opinion, is not of that character to warrant the overturning of the deeds of Mrs. S. A. Cox to the lands in controversy and declaring that, instead of

holding the absolute title in her own right, she was a trustee for the appellee. The court therefore erred in so holding.

The evidence shows, and it is conceded by the appellant, that the appellee has a curtesy in the lands in controversy which entitles him to the possession and the rents and profits during his life.

Other questions, as to the removal of the administrator and setting aside the sale of the personal property and inventory of the administrator, are procedures of the administration which should be directed to the probate court, in which a court of chancery can not intervene. *Reinhardt* v. *Gartrell*, 33 Ark. 727. See also *Watson* v. *Henderson*, 98 Ark. 63, 72.

The judgment of the chancery court declaring a resulting trust in favor of the appellee and cancelling the deeds to S. A. Cox, deceased, and vesting the legal and equitable title to the lands in controversy in the appellee is reversed, and the cause is remanded with directions to enter a decree setting aside the order of the probate court authorizing and directing a sale of the lands in controversy and the sale made thereunder, and with directions to enter a decree vesting the legal title in the appellants, subject to the curtesy right of appellee, and for such other and further proceedings as may be necessary according to law and not inconsistent with this opinion.