CAIN *v.* CAIN.

## Opinion delivered October 4, 1920.

1. DIVORCE—CRUELTY.—A decree granting a wife a divorce was proper where the testimony disclosed specific acts of misconduct on the husband's part in continuous drunken debauchery, and threats and acts of violence toward his wife and children which indicated settled hate, alienation and estrangement, and were well calculated to destroy her peace of mind and to render her condition in life intolerable.

2. DIVORCE—QUIETING TITLE OF WIFE.—Where a husband for valuable consideration conveyed his home to his wife, on granting her a divorce the court properly quieted title in her.

Appeal from Woodruff Chancery Court, Northern District; *A. L. Hutchins,* Chancellor; affirmed.

*W. J. Dungan* and *E. M. CarlLee,* for appellant.

1. The record and evidence constitute a conglomerated mass of generalities. Evasion of definiteness and lack of specific testimony as to the issues characterizes the record throughout its context. The evidence fails to make out a case of indignities such as to render life intolerable. 9 Ark. 507; 104 *Id.* 303. The testimony of appellee shows that there was no malice or hate toward her by the husabnd. 105 Ark. 196. There was no proof of specific acts and language showing rudeness, contempt and indignities. Specific acts and conduct must be shown. *Ib.*

2. The chancellor erred in finding that the quitclaim deed to appellee for the homestead conveyed the absolute title to the wife. No proper proof was made of the mortgage and deed claimed to be the real consideration for the quitclaim deed.

*Harry M. Woods* and *R. M. Hutchins,* for appellee.

1. The statute relied upon by appellee is Kirby's Digest, § 2672, par. 5. The complaint is sufficient and definite. No demurrer was filed. No objection was made to it, and no motion to make it more definite and certain. 38 Ark. 324; 114 *Id.* 516. Appellee has conformed to the rules in 9 Ark. 507; 105 *Id.* 196. Specific acts were

proved of daily abuse, curses, profanity and vulgarity, even threats to kill and driving her from home with deadly weapons. Indignities rendering her condition intolerable were proved. The specific acts were proved. 9 Ark. 507; 38 *Id.* 119; 104 *Id.* 318; 44 *Id.* 429; 38 *Id.* 323; 76 *Id.* 28; 104 *Id.* 381.

2. As to the property rights. The real consideration for the deed to the home place was the wife's signature to $10,000 worth of property in Cotton Plant and Augusta. The true consideration of a deed may be shown. The recitals in the deed as to consideration are *prima facie* evidence, which may be overthrown by evidence (82 Ark. 492), but in the absence of evidence to the contrary they are presumed to be true. 66 Ark. 645. Here the evidence shows a consideration in addition to the one mentioned in the deed. 90 Ark. 426. The contentions of appellant that the deed to appellee be canceled and property restored as provided by Kirby's Digest, § 2684, are not sound. 78 Ark. 346; 102 *Id.* 635; 127 *Id.* 506. No property was obtained from the husband by imposition or deceit. 115 Mo. 496. No fraud was practiced on appellant. 75 Ark. 127; 116 *Id.* 153. The chancellor's findings are not against the evidence.

WOOD, J. This suit was instituted by the appellee against the appellant for divorce. Among other things she alleges as grounds for her divorce that during the year 1909, or later, the appellant began to use whiskey, and that his ill-treatment of appellee then began; that at first it was confined to the period of his drunkenness; that appellee submitted to it through a period of seven years, believing that appellant would be kind and good to her during his sober moments; that it was impossible for appellee to detail all of the humiliations and indignities to which she was subjected on account of the excesses of the appellant during his drunken debauchery. She alleges that his coarseness and disposition to be unkind and discourteous grew from time to time, and that after a period of a few years these indignities were not limited to the time of his intoxication, but, on the other

hand, they occurred when he was sober, that he began to use to her and in her presence and about the home language which was unfit for use in her presence, or in the presence of his children, or any other woman; that his language was obscene and profane, and was directed to her and used in the presence of his children at any time he became irritated about any immaterial matter around the home. Appellee further alleges that on more than one occasion the appellant had come into the home and abused her with vulgar and profane language; that he had terrorized his children by his conduct; that he had, by his violence and by his breaches of the peace, humiliated her and her children in the eyes of their neighbors and in the eyes of the community where they lived. She stated that about three weeks before she filed suit the appellant had deserted and abandoned the appellee and her children and notified the appellee that he would not support her, and he refused to provide for them the necessities of life, and that he did this in the most offensive manner conceivable; that in order to maintain herself she attempted to rent some rooms in her home, which the appellant had abandoned; that, in order to humiliate, intimidate, and terrorize her, appellant procured a double barreled shot gun, came to the home and drove all people from the house; that out of fear of losing her life she left the home; that peace officers were called in, and the entire neighborhood and town were aroused and disturbed by his actions; that his manner on these and other occasions was threatening and offensive—so much so that she had to have him put under bond to keep the peace; that with curses and most violent language he abused his children and flourished his shotgun; that on still another occasion he cursed and abused her to such an extent that she and the children were terrorized and the neighborhood aroused, and in order to protect herself she called upon the sheriff, and the appellant was arrested and fined for disturbing the peace.

She recites that on another occasion he came home intoxicated and talking in a loud, violent, and profane

manner, and the appellee and her children went into her room and locked the door; that appellant proceeded to shoot his gun and talk loudly and boisterously, so that the neighbors had to call for the peace officers. Appellee alleges that the instances she mentions were but a part of the cruel and systematic humiliations and indignities that she suffered, which endangered her life and rendered her condition intolerable.

The appellee then alleges that the appellant had executed a quitclaim deed conveying to her certain lots, which she describes and designates as the "home place" in the town of Augusta, Woodruff County, Arkansas, and alleges that the deed was executed by appellant in order to procure her signature to a deed to other parties in which appellant was conveying property in Cotton Plant, Arkansas, worth about $10,000, and also to obtain her signature to another piece of property near the station of Augusta, which appellant was conveying to one T. D. Wilkes. The appellee avers that the appellant was the owner of certain property, real and personal, which she specifically sets forth and describes in her complaint. She prays that she be granted a divorce, and be given the care and custody of the children, and that the appellant be perpetually enjoined from interfering with her home and the children, that she be awarded an undivided one-third interest in the real estate of the appellant for life, and that she have one-third of his personal property.

The appellant denies specifically all material allegations of the complaint as to his cruel treatment, indignities, etc., and all allegations except as to the excessive drinking, which he explained by saying that to drink at all is excessive. He admits that there were quarrels between himself and the appellee, which he alleges were brought about by the failure of the appellee to comply with appellant's request to help him economize and manage their household affairs and expenses, so that he could live within his means. He states that he became "blue and disheartened and began to drink

whiskey and to become inebriated;'' that they continued to live together, and that disagreements between them during the years which passed until the year prior to the filing of the complaint were not continuous, daily occurrences, but could be properly described as occasional quarrels.

The appellant admits the execution of the quitclaim deed to the home place and states that such deed was executed by the appellant to the appellee upon the consideration of $1 and with the understanding and agreement that appellee should join appellant in a deed conveying certain property to T. D. Wilkes; that after the Wilkes deed was executed and while the appellant was sick in bed, the appellee slipped the deed from his pillow and destroyed or otherwise disposed of it. The appellant prays that the deed executed by him to the appellee conveying the home place be set aside and canceled, and that the complaint be dismissed for want of equity.

There was testimony on behalf of the appellee tending to prove the allegations of her complaint. The testimony shows that there were three daughters born of the marriage; Gretchen, aged twenty; Genevieve, eighteen, and Christine, eight. Mrs. Cain stated that her husband began to mistreat her after they had lived together about thirteen years; that he began to drink in 1909 and to stay away at night. His manner became offensive and insulting, and after that he did not seem to care for her. She overlooked it until it became unbearable. At first this conduct toward her was during the times when he was intoxicated, but afterward it was not confined to periods when he was under the influence of liquor. She specified various occasions when she was subjected to mistreatment and described his conduct, stating that during the last three or four years there had never been a day that he had not cursed her and made her life miserable. She explained that by ''cursing'' she meant the most repulsive language imaginable; that when she would mention the ordinary household affairs, he would

become infuriated and begin to curse her. Occasionally he used such language in the presence of the children and seemed to have lost all respect for her; that during this time her life had been endangered. She described the acts of violence on the part of appellant on certain occasions substantially as set forth in her complaint. In regard to the deed to the home place, the appellee's testimony was in accord with the allegations of her complaint.

The eldest daughter was called as a witness, and her testimony corroborated the testimony of the appellee. She said:

"During the last year or so my father has *every day* uttered indecent words that no father would utter, every time we would say anything to him, and he ran his children away from home. During the last six years my father's conduct has been very bad; he was either cursing my mother or making life disagreeable for her, so that we could not have company or enjoy our own home. And it was just as frequent as he came home. During the last year or so other things that happened that made it miserable for my mother were: I was at home with Christine, and he came home and threatened to kill everybody and took the baby out in the cold, shot the gun and he said something he shouldn't and I got the poker. Also the last time he was at home he said he was going to kill us, and ran us out. We could not have company, and when we did have men friends he would say they should not have his daughters, and one night he got the butcher knife after us. Yes, I know what cursing and profanity means, and I mean to convey that end when I use those words."

The appellant himself testified that he had read the deposition of his wife, and that he would not dispute her word at all; that she was above testifying to that which was false. He stated that he had been drinking about twenty times in the presence of his wife and children; that he remembered cursing in her presence, "oh, so many times." He stated that the signature of his

wife to the deed conveying certain property to Wilkes was a part of the consideration to appellant for deeding the home place to his wife. He stated that he did not deliberately put the title to the home place in his wife in order to get her to sign the conveyances to property in Cotton Plant and Augusta. He said: "It was in the way of a compromise so I could get funds. When I signed and delivered the deed to her to the home place in August, she, because of that, executed the deeds to the Cotton Plant and Wilkes property. Yes, that's true. Love and affection for my wife were not altogether the reason I executed the deed to her."

The decree of the court awarded the appellee an absolute divorce from the appellant; quieted the title in her to the home place; gave her the exclusive care and custody of Christine Campbell Cain, their eight-year old daughter, with permission to appellant to visit her; enjoined appellant from interfering in any way with the appellee in the enjoyment of her property; awarded to appellee an undivided one-third interest for life in any real estate left to appellant, and also one-third of the personal property, after satifying the liens thereon; $50 per month alimony during the litigation and $15 per month after the rendition of the decree for the support of their eight-year old daughter; taxes $62.73, and insurance $62.50, due on the home, and all costs of suit. This appeal is from that decree.

The decree was in all things correct. The testimony discloses specific acts of misconduct on the part of appellant in drunken debauchery, and threats and acts of violence toward his wife and children, which were well calculated to destroy her peace of mind and to render her condition in life intolerable. The place where appellee resided was deeded to her, as the undisputed evidence shows, for a valuable consideration, and she was the exclusive owner thereof, and the decree was correct in quieting title in her. At this place appellee and her daughters were entitled to have a refuge from violence, a home where peace and happiness reigned, but instead

it had become a veritable hell on earth, made so by the disgraceful conduct of a husband and father. The allegations of the complaint and the proof adduced to sustain them meet every requirement of the law as announced by this court in *Rose* v. *Rose*, 9 Ark. 507, and consistently followed in all subsequent cases. That requirement is that where the ground for divorce is an intolerable condition of life alleged to have been produced by the conduct of an offending spouse, the party complaining, although not wholly blameless, nevertheless must not, by his, or her culpable conduct, have contributed in a material degree to bring about the unendurable condition of which complaint is made. In this sense the complaining party must be without fault. The specific acts or words constituting the misconduct must be alleged and proved, and these acts, or words, or both, must be of such a nature as to cause the condition complained of. Here, even though the allegations are that "the appellant cursed the appellee, using obscene, profane, and vulgar language, too bad to repeat," and even though there was no proof of the particular words used, still the appellee alleged specific acts of drunken debauchery on the part of appellant, and violence toward the appellee and her children while in his besotted condition, and declarations of an intention to desert them and to withdraw his support from them while he was sober. The drunken sprees, and acts of violence toward the appellee and the children, were so "habitual, permanent, and continuous" as to warrant the conclusion that there was a condition of "settled hate, alienation, and estrangement" on the part of appellant toward appellee, which rendered her life intolerable. Hence the case is well within the rule announced in *Rose* v. *Rose, supra,* and subsequent cases. See *Kurtz* v. *Kurtz,* 38 Ark. 119; *Brown* v. *Brown,* 38 Ark. 323; *Haley* v. *Haley,* 44 Ark. 428; *Malone* v. *Malone,* 76 Ark. 28; *Keintz* v. *Keintz,* 104 Ark. 303; *Bell* v. *Bell,* 105 Ark. 196; *Dunn* v. *Dunn,* 114 Ark. 516.

The decree, is therefore in all things affirmed.