OCIE RUTH DAME SPRUILL *v.* LAFAYETTE L. SPRUILL, ADMR.

5-4076                                                   410 S. W. 2d 606

Opinion delivered January 23, 1967

*Henry & Henry,* for appellant.

*Clark, Clark & Clark,* for appellee.

CARLETON HARRIS, Chief Justice. This appeal relates to a divorce decree. Ocie Ruth Dame Spruill, ap-

pellant herein, instituted suit for divorce, alleging indignities against her husband, Lafayette J. Spruill,[1] who will at times hereafter, for convenience, be referred to as appellee. Mrs. Spruill sought possession of the home located on Lake Conway, the title being in her name. Mr. Spruill filed a general denial and a cross-complaint, asserting that he should be granted an absolute divorce from appellant on grounds of indignities. He also prayed that he be awarded an interest in the property because of the improvements which he had placed thereon, and he sought a lien to the extent of his interest. On trial, the court granted a divorce to Mr. Spruill, and ordered the property sold. It was found that Mrs. Spruill had expended the sum of $2,068.46 in partial payment for the construction of the residence plus $500.00 for the lot on which the house was placed, and which had been purchased by appellant prior to the marriage. The court further held that Mr. Spruill had, subsequent to the marriage, expended the sum of $2,795.48 on the construction of the residence, and granted him a lien in this amount, subordinate however to the interest ($2,568.46) of Mrs. Spruill. After payment of these amounts and costs, any remaining money was to be paid to appellant. From the decree so entered, Mrs. Spruill brings this appeal. For reversal, it is first asserted that the court erred in denying appellant an absolute divorce, and in granting same to Mr. Spruill. It is then contended that any money expended by appellee in improving the property was intended as a gift from him to his wife, and the Chancellor's findings are contrary to the law.

Pertinent background facts developed by the evidence are as follows:

The parties were married on March 3, 1964, at Enid, Oklahoma, Mr. Spruill being 67 years of age, and Mrs. Spruill being 60 years of age. No children were born to them, but both had children by previous marriages. At

---

[1]Subsequent to the entry of the decree, Mr. Spruill died, and the cause was revived in the name of Lafayette L. Spruill, as ancillary administrator of the estate of Lafayette J. Spruill, deceased.

the time of this marriage, Mr. Spruill, together with his son, owned a home in Tonkawa, Oklahoma. Spruill had been an oil field worker for Shell Oil Company, but had retired in 1957, because of a heart condition. According to appellee's testimony, his wife was dissatisfied while living in Tonkawa, and she urged that a home be built on Lake Conway in Faulkner County, Arkansas, where she owned a lot. Mrs. Spruill's version was that her husband wanted to move to that location so he could fish. The property in Oklahoma was sold, and the parties came to Faulkner County, Mr. Spruill depositing over $3,300.00 in the First National Bank of Conway. A shell home was constructed upon the land owned by appellant, Mrs. Spruill testifying that she owned property in North Little Rock, which was mortgaged to obtain a loan to help pay amounts due on the shell home contract. It is established that both parties furnished substantially the amount of monies for construction of the house as found by the Chancellor.

Under her first point, appellant calls attention to the fact that in rendering his findings, the Chancellor stated that he granted a divorce to Mr. Spruill, "not so much in an attempt to find fault, but if a divorce were granted the other way, it would be necessary that a dower award be made under the statute." It is urged that the Chancellor should have made a definite finding relative to the party at fault, and appellant contends that the evidence reflects that the divorce was occasioned by Mr. Spruill's conduct. We do not agree that appellant's argument contains merit. Let it be remembered that, irrespective of the reason given by the trial court as a basis for its decision, we will not reverse though the reason be erroneous, if the decision reached by the trial court is correct. *Reamey* v. *Watt,* 240 Ark. 893, 403 S. W. 2d 102; *Southern Farm Bureau Casualty Insurance Company* v. *Reed,* 231 Ark. 759, 332 S. W. 2d 615, and cases cited therein. We think, and find, that the evidence preponderates heavily in favor of appellee, relative to which party was entitled to the divorce. Mrs. Spruill testified that her husband constantly cursed her, would

get angry, stay up all night, and sleep all day; that he would view television until midnight, turning the volume up so high that she could not sleep. Also, she stated that he would stay away from home all day, but would not allow her to drive either a car or a truck that they owned. Mrs. Nancy Pitts of Little Rock, appellant's daughter-in-law, testified in behalf of Mrs. Spruill, but it is admitted that her corroboration was slight.

Mr. Spruill testified that he prepared his own breakfast because his wife would not get up and fix it, and that she did not prepare more than six evening meals during the time of their marriage.[2] He also complained that she constantly cursed him, and this testimony was verified by the neighbors. Joe Dunbar stated that he heard appellant curse appellee about three times per week (while they were in the yard), and that Mr. Spruill would "turn around and walk away." He also testified that he heard Mrs. Spruill threaten her husband by stating that she would take a butcher knife and "cut his belly open;" in addition, that he heard a threat to shoot appellee with a gun. Mrs. Dunbar testified that she also overheard Mrs. Spruill curse her husband, and likewise was aware of the threat to cut him open; further, "Most every time I was out there working in my garden I'd hear her. And I'd hear her from the house too." The witness said that she never did hear appellee raise his voice. Christina Ryan, another neighbor, stated that appellant had told her that she wished her husband would "drop dead," this desire being more vigorously expressed by adding a vile epithet. We reiterate that the Chancellor's action in granting the divorce to Mrs. Spruill was supported by the preponderance of the testimony.

[2] The charge of failing to prepare meals was, to some extent, admitted by appellant. From her testimony: "I was tired. And he come in about 2:30 [P.M.] from town with this stuff and all I could see he got mad about, he come in, brought this stuff in and. I was laying on the divan in the living room and he came in and went to cussing me. Cuss words why didn't I have dinner on the table. And I told him why you are on a diet and your stuff is all in there. Cottage cheese and juices is what you are supposed to eat and I had a sandwich."

Appellant contends that any monies expended by Mr. Spruill in improving appellant's property amounted to a gift to her from him, and that, under our cases, the court erred in granting him a judgment, and lien on the property, for the amounts he had expended. It is true that we have held that, where a husband advances money to improve his wife's property, or where property is purchased by a husband and placed in the name of a wife, there is a presumption that a gift was intended. See among other cases, *Fine* v. *Fine,* 209 Ark. 754, 192 S. W. 2d 212, and *Wood* v. *Wood,* 100 Ark. 370, 140 S. W. 2d 275. However, the presumption is rebuttable, and in fact, this court seems to have recognized in 1956, that the aforesaid rule, when strictly applied, frequently brings about a result that is harsh and inequitable. In *Stephens* v. *Stephens,* 226 Ark. 219, 288 S. W. 2d 957, the husband and wife of middle age (Mrs. Stephens having children by a prior marriage), who had been married in Illinois, made a trip to Baxter County, Arkansas, and purchased one tract of land as an estate by the entirety. Another tract was placed in the name of Mrs. Stephens, though Mr. Stephens furnished some part of the purchase price. Subsequently, the parties moved to Arkansas, where they intended to build a home on the tract purchased as an estate by the entirety; however, they changed their plans, sold that property, and built the home on the tract which was held in the name of the wife only. Both parties contributed financially to the construction of the house. After building the home, the parties realized that, in the event of Mrs. Stephens' death, difficulties could arise between the husband and the children of Mrs. Stephens, and a joint will was executed wherein each left to the other a life estate in any property owned, with the remainder going to the children of Mrs. Stephens. They also agreed that they would not revoke or cancel the will, but would keep it in force. Later, Mrs. Stephens instituted suit for divorce, and, though not denying that Mr. Stephens had contributed substantial amounts to the construction of the home, contended (for the same reason argued in the case before us) that he had no interest in the property. The Chan-

cellor granted Mrs. Stephens the divorce, but decreed that the property should be sold, and the proceeds divided. On appeal to this court, we said:

"The chancellor's decree, providing for a sale of the property and a division of the proceeds, is in accordance with the principles of equity and good conscience. In effect, Mr. Stephens was given a lien. He has reached the age of retirement and only has a small pension of $101.55 a month. He invested his life's savings in the home; he and Mrs. Stephens agreed in writing that the property had been acquired and improved by their joint efforts. It would be unthinkable to say, in the circumstances existing here, that Mr. Stephens has no interest in the home."

We then quoted an earlier case stating, "It does not comport with reason that one would denude himself of all his earnings during a long period of years without making some provision for his old age." Here, Mr. Spruill was a retired employee of Shell Oil Company, receiving a pension from that company, Social Security, and a Veterans Administration pension.[3] He, together with his son, owned the property in Tonkawa, Oklahoma. According to appellee's testimony (which the Chancellor evidently believed),[4] Mrs. Spruill was not happy there,

[3] Spruill testified that, upon being divorced, this particular payment, amounting to $80.00 per month, would cease.

[4] This is not difficult to understand, since Mrs. Spruill made several conflicting statements. For instance, she testified that she had been married twice previously, and flatly stated there had been no other marriages; subsequently, however, she admitted two other marriages, testifying, as to one, that she didn't forget it, but just didn't want to tell about it. On another occasion, she stated that she had $102.00 in the bank (at the time of the trial), but later said that she had about $2,000.00 in a Louisiana bank, which was deposited in her daughter's name. Also, she denied that she met Mr. Spruill through a lonely hearts club, and stated that she had never written him as "Dear Club Friend." However, appellee offered a letter in evidence purportedly written by appellant, wherein she referred to him as "Dear Club Friend;" a statement also appears in the letter. "There is one thing wrong. The club give you my name as Ruby Dame. It is Ruth Dame. Not Ruby."

cried and complained, and asked him to sell the Oklahoma property, and build a home on Lake Conway. It is true that in the Stephens case, the parties, subsequent to the construction, recognized in writing that the home had been acquired through their joint efforts. In the instant case, Mrs. Spruill, in open court, likewise recognized that her husband had contributed the approximate amount claimed for the construction of the home. Appellee, in his brief, makes two observations that we think are somewhat significant. The first is that the house was not built on the wife's property for the purpose of fulfilling a marital obligation to provide a home for Mrs. Spruill, for appellee was already providing a home in Oklahoma; the move to this state was simply an effort to please his wife. In the next place, it is pointed out that title was not placed in appellant at the direction of appellee, but rather, Mrs. Spruill already owned the property at the time of the transactions involved; in other words, appellee took no affirmative action to place the title in his wife, although in *Stephens* this was done.

Here, under the evidence, as in that case, "the Chancellor's decree, providing for a sale of the property and a division of the proceeds, is in accordance with the principles of equity and good conscience." This was appellant's fifth marriage, and a second for Mr. Spruill, the marriage coming late in life. The parties only lived together for 18 months. Appellee had sold his home that he owned with his son, and, after depositing something over $3,300.00 in the Conway Bank, proceeded to contribute the amount, heretofore mentioned, to the new home, making one payment of $2,500.00 within a week after his deposit was made. Here, undoubtedly, the greater part of his savings was expended for construction of this house.

There is no error in the decree.

Affirmed.

FOGLEMAN, J. dissents.

John A. Fogleman, Justice, dissenting. I concur with the majority opinion in affirming the chancellor insofar as granting the divorce to Mr. Spruill is concerned. But I must respectfully dissent from the affirmance of the trial court's holding with reference to the real estate involved. It seems to me that the court is abandoning a rule followed by it for over eighty years, and upon which courts and the bar have relied for all that time.

In *Ward* v. *The Estate of Ward,* 36 Ark. 586, decided in 1880, it was held that the law would not imply a promise on the part of the wife to repay advances made by her husband in improving her real property, it being presumed that they were gifts.

In *Hamby* v. *Brooks,* 86 Ark. 448, 111 S. W. 277, decided June 1, 1908, it was held that no presumption would be raised in such circumstances that a husband intended to create a trust in his own favor.

In cases where the advances were by purchase of land by the husband, with conveyance made to the wife, it was held that in order to overcome the presumption of a gift and impress a trust in favor of the husband, the evidence must be clear and convincing and so positive as to leave no doubt of the fact. *Hall* v. *Cox,* 104 Ark. 303, 149 S. W. 80; *Wood* v. *Wood,* 100 Ark. 370; 140 S. W. 275; *Carpenter* v. *Gibson,* 104 Ark. 32, 148 S. W. 508; *Wood* v. *Wood,* 116 Ark. 142, 172 S. W. 860; *Parks* v. *Parks,* 207 Ark. 720, 182 S. W. 2d 470.

It is true that it has been held that such a presumption is rebuttable by preponderating evidence of antecedent or contemporaneous declarations and matters showing that the wife took as trustee and not beneficially, if they are fairly connected with the transaction, or are facts which existed so soon thereafter as to form part of the transaction. *Della* v. *Della,* 98 Ark. 540, 136 S. W. 927; *Poole* v. *Oliver,* 89 Ark. 578, 117 S. W. 747; *Johnson* v. *Johnson,* 115 Ark. 416, 171 S. W. 475; *Parks* v. *Parks, supra.*

The presumption that the making of improvements by a husband on his wife's lands is a gift to her is recognized in later cases. See, for example, *Aycock* v. *Bottoms*, 201 Ark. 104, 144 S. W. 2d 43.

This court has heretofore, under these circumstances, refused to impress a trust on land in favor of a husband. *O'Hair* v. *O'Hair*, 76 Ark. 389, 88 S. W. 945. This is essential to the award of a lien on the wife's property as was done by the chancellor below.

These principles were all reviewed and applied in *Fine* v. *Fine*, 209 Ark. 754, 192 S. W. 2d 212, when that part of the decree of the trial court awarding the husband judgment for expenditures made in improvements on the wife's property was reversed by this court. The circumstances in that case would seem to me to present stronger equities in favor of the husband than are found here. There the husband had received serious and permanent injuries, incapacitating him. The greater portion of $1,130.00 deposited in the wife's bank account by him from a recovery of compensation for his injuries —the exact amount of his accident insurance—was expended in improving his wife's property. The husband claimed that he had entered into a partnership agreement with his wife whereby *they* would construct some rent houses on *her* property in order to have an income to live on in *their* old age. The wife claimed a gift to her. This court found the testimony in conflict and the evidence short of the "clear and convincing" effect the law requires. This case was cited as authority in *Smith* v. *Smith*, 227 Ark. 26, 295 S. W. 2d 790, where a chancellor's award of a judgment and lien in favor of a husband for such expenditures was reversed. Its holding has not at any time been overruled or modified.

The actions of Spruill here are no different from those of the husband in *Simpson* v. *Thayer*, 214 Ark. 566, 217 S. W. 2d 354. Dr. Simpson had made substantial improvements and paid taxes on property previously purchased by him, deeds for which had been taken in the

wife's name. In an action by which the heirs sought to have the title divested from the wife, this court said that these expenditures were all referable to his natural desire to care for and manage his wife's property.

I have found no evidence whatever in this record to make it appear that Spruill had any desire whatever to do anything except provide a home for his wife, however unsatisfactory she may have turned out to be. I cannot find any testimony that would show anything upon which the husband's actions were based other than a request by an unhappy Mrs. Spruill that the parties came to Arkansas because she didn't want to live with him in Oklahoma. This, to me, falls far short of the "clear and convincing" evidence heretofore required.

The majority opinion does not in any way distinguish this case from *Fine* v. *Fine,* 209 Ark. 754, 192 S. W. 2d 212. The fact that Spruill took no affirmative action to place the title to the lot in the wife is no distinction. Neither did Fine. Nor did Smith in *Smith* v. *Smith,* 227 Ark. 26, 295 S. W. 2d 790.

The majority find support for the decree of the chancellor in *Stephens* v. *Stephens,* 226 Ark. 219, 288 S. W. 2d 957, in which this court did not even pretend to overrule any of the principles theretofore followed, hereinabove set out and so well reviewed in *Fine* v. *Fine, supra.* But many distinctions can be found between that case and this. There the realty was *acquired* by the joint efforts of the parties and the husband made the down payment. He invested his entire life savings. After the construction of the home the parties realized that the title, being in the wife's name, would not pass after her death as they desired, so they made a joint will, each leaving the other a life estate in any property owned and entered into a contract to keep the will in force. This court found evidence to rebut the presumption of gift in the will and contract. Nothing of that sort exists here. On the contrary, it appears that Mrs. Spruill has a crippled leg and is unable to work, a condition

that existed at the time of the marriage; that she only has an income of $50.00 per month from a rental house in North Little Rock from which she must pay real estate taxes, insurance and upkeep and $20.00 per month on a mortgage to secure a loan of $1,100.00 for the house built on the property in question.

"Rules of property" have always been highly regarded by this court and it has been said that the overruling of such rules should rarely be done and, when done, it is with a great deal of trepidation. *Gibson* v. *Talley,* 206 Ark. 1, 174 S. W. 2d 551. In the cited case this court approved the following definition of a rule of property given in 54 C.J. 1110:

> "A settled legal principle governing the ownership and devolution of property; the decisions of the highest court of a state when they relate to and settle some principle of local law directly applicable to title. In the plural, those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto."

The principles reviewed in *Fine* v. *Fine,* 209 Ark. 754, 192 S. W. 2d 212, seem to fit this definition well. If they are not actually "rules of property", they are virtually such. Although we should approach their overruling with trepidation, it would be far better if we would overrule them rather than abandon them.

For the reasons stated above, I respectfully dissent from the majority opinion.