## MAYERS *v.* LARK.

### Opinion delivered June 1, 1914.

1. REVIVOR—TITLE TO LANDS.—In an action involving the title to land, the cause should be revived, after the death of one of the litigants in the name of his heirs. (Page 211.)

2. APPEAL AND ERROR—REVIVOR—TITLE TO LAND—HARMLESS ERROR.—In an action involving the title to land, where defendant died while the cause was pending, it is error to revive the action in the name of a special administrator, but when all the heirs of deceased are before the court, the error will be held harmless. (Page 211.)

3. GIFT—CONVEYANCE BETWEEN HUSBAND AND WIFE.—Where a husband voluntarily conveys property to his wife, or causes it to be conveyed to her, even if he furnishes the money, there is a presumption that it was a gift. (Page 213.)

4. GIFTS—PRESUMPTION—PROOF TO OVERCOME.—Where a presumption arises that a conveyance made to a wife was a gift from her husband, the evidence held insufficient to overcome that presumption. (Page 214.)

5. TRUSTS—RESULTING TRUSTS—EVIDENCE.—In order to establish a resulting trust, the evidence must be full, clear and convincing. (Page 215.)

6. ATTORNEY'S FEES—REVERSAL OF CAUSE.—An order of court allowing attorney's fees to appellee's attorneys, falls with a reversal of the decrees in favor of appellee, and the decree allowing such fees will be reversed also. (Page 215.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

*Joseph M. Hill* and *Henry L. Fitzhugh,* for appellants.

1. The record conclusively shows that the property was bought and paid for by Mrs. Mayers. The fact that the deeds were made to her, while not conclusive, raises a strong presumption in her favor, which can only be overcome by the clearest and most positive proof. The fact that Doctor Mayers, during the sixty years of their married life, never asserted any claim or title in himself, is strong proof that he had no rights to assert; and if he was satisfied to let the title remain in his wife, even if the

property had been bought by him, this fact is binding on his heirs.

The testimony utterly fails to establish a resulting trust in favor of Doctor Mayers, but falls entirely below the requirements of the law, that the proof must be full, clear and convincing. 89 Ark. 185; 75 Ark. 445; *Id.* 556; 76 Ark. 14; 67 Ark. 354.

2. If Doctor Mayers purchased the property and paid for it with his own funds, his having taken, or caused the title to be taken, in the name of his wife, will be treated in law as an advancement or gift, and her title as good. 104 Ark. 304; 73 Ark. 281; 89 Ark. 579; 76 Ark. 389; 89 Ark. 182.

*Pryor & Miles,* for appellees.

1. The preponderance of the evidence establishes the fact that the property was conveyed to Mrs. Ayers, in trust; that the deed was made to her at the request of her father, who, at that time, was involved in bankruptcy proceedings. No necessity or reason existed why she should have held the property as trustee for her mother, nor any reason shown why, if her mother purchased the property, the deed should not have been made directly to her. The evidence shows that the lot Mrs. Mayers really purchased with her own funds, a legacy from a deceased relative, was deeded directly to her; and the mere fact that the daughter afterward conveyed the property in question to her by deed would not vest her with the equitable title, since the daughter could convey no better title than she herself possessed. The chancellor's findings will not be disturbed unless clearly contrary to the preponderance of the evidence. 44 Ark. 216; 76 Ark. 252.

Under the law as it existed at the time of the purchase, even if it had been made with the funds of the wife, it would become the property of the husband. 84 Ark. 359; 80 Ark. 381.

There is no evidence that Mrs. Mayers ever asserted any title to the property adverse to her husband. The mere fact of his knowing that the trusteeship had been changed from his daughter to his wife, would not bar or

estop his heirs from claiming his interest in the property. 63 Tex. 432; 45 Am. Dec. 391.

2. From the time of the conveyance from Johnson to Mrs. Ayers, the property was impressed with the trust relationship existing between Doctor Mayers and Mr. Ayers. The fact of the existence of the constructive or resulting trust is, in effect, admitted. The only question to be determined is whether Mrs. Ayers held as trustee for her father or her mother. She says for her father, and her testimony is amply supported.

McCULLOCH, C. J. The subject-matter of this controversy is a lot on Garrison Avenue, in the city of Fort Smith, and plaintiffs, who are appellees here, are endeavoring to prove that the title is held in trust by their mother, who was one of the defendants and who died while the cause was pending in the court below. The action was instituted at law by the plaintiffs, Mrs. H. C. Lark and Mrs. V. L. McCoy, against their mother, Mrs. Mary L. Mayers, and her three other daughters, Mrs. Rapley, Mrs. Rogers and Mrs. Linde, the object of the suit being to have the property partitioned.

The cause was transferred to the chancery court, and proceeded to final decree, from which an appeal has been prosecuted to this court.

The plaintiffs, in their amended complaint, alleged that the property in controversy was purchased by their father, Michael Mayers, from one Raphael M. Johnson, and, at his instance, conveyed to his daughter, Harriett C. Lark, one of the plaintiffs, with the understanding and agreement that the latter should hold the title for him (the said Michael Mayers), and that subsequently, towit, in the year 1874, said Harriett C. Lark executed a deed by which she intended to convey the property to her father, said Michael Mayers, but by mistake conveyed the same to his wife, Mrs. M. L. Mayers, one of the defendants.

The prayer of the complaint was that defendant, Mrs. Mayers, be declared a trustee holding the legal title for the benefit of plaintiffs and other children of said

Michael Mayers, and that the court divest the title out of said trustee and vest it in said children.

The suit embraced other property in the State, but which was afterwards eliminated from the litigation.

Mrs. Mayers and the other defendants answered, denying that the property in controversy was purchased by Michael Mayers, or that he had any interest therein save as the husband of said Mrs. M. L. Mayers, and denied that there was any mistake with reference to the conveyance. They alleged that the property was purchased by said Mary L. Mayers with her own funds, and that the title was conveyed to her daughter, Mrs. Lark, then Mrs. Ayers, to hold for her, and that subsequently, at her request, Mrs. Lark conveyed the property to her. Mrs. Mayers also pleaded that she had been in undisputed possession of the property for more than forty years, and had paid taxes thereon during that time and up to the commencement of this action.

The original complaint was filed and summons was issued on April 28, 1909.

The depositions and proof in the case, at least, most of it, was taken prior to the death of Mrs. Mayers, which occurred in March, 1912.

During the pendency of the action, Mrs. Mayers conveyed the middle third of the lot to her daughter, Mrs. Linde, and the east third thereof to her great granddaughter, Eleanor May Anderson, who was a child four or five years old. After the death of Mrs. Mayers, the guardian of Mrs. Linde, who had been adjudged to be *non compos mentis*, intervened in the action and asserted title under said conveyance; and also the guardian of the child, Eleanor May Anderson, applied to be made a party, also claiming the portion of the lot conveyed to her. They were accordingly made parties.

Mrs. Mayers resided in Texas at the time of her death, and the probate court there appointed an administrator, and the chancery court revived the case in the name of said special administrator.

The order of revivor in the name of the special administrator was improper, for title to land being involved the cause should have been revived in the name of the heirs; but inasmuch as the heirs were all parties to the action and were actively litigating the cause, and the two grantees in the conveyances of Mrs. Mayers were made parties subsequent to her death, the error in the order of revivor is unimportant.

Michael Mayers and his wife, Mary L. Mayers, intermarried in the year 1848 at Fort Smith, Arkansas, and lived there continuously until a few years after the close of the war between the States. Michael Mayers was a druggist and was called Doctor Mayers. The property in controversy was purchased from one William Sweeney in January, 1868, and a part of the purchase money was paid in cash at the time of the purchase, the total price being about nine hundred or one thousand dollars. No conveyance was made by Sweeney at that time. On August 19, 1869, the balance of the purchase money was paid with money borrowed from Raphael M. Johnson, and on that day Sweeney conveyed the lot to Johnson; and on November 4, 1869, Johnson conveyed the property to Harriett C. Lark, the daughter of Michael and Mary L. Mayers, she being then the wife of Captain Ayers of the United States Army.

It is unnecessary to determine whose money was used, whether that of Michael Mayers or his wife, in purchasing the property from Sweeney, and a discussion of those details is immaterial, for we rest our opinion upon subsequent transactions. Mrs. Ayres held the title to the property until December 1, 1874, when she and her husband joined in a quitclaim deed conveying the title to her mother, Mrs. Mayers.

When the property was purchased from Sweeney, it had no improvements thereon of any value, but a building was subsequently placed upon it which was destroyed by a cyclone which swept over the city of Fort Smith about the year 1877. After that money was borrowed and used in constructing a brick building on the property and

a mortgage was executed on the property by Mrs. Mayers to secure payment of the borrowed money. In applying for the loan, there was discovered a defect in the acknowledgment to the deed of Mrs. Ayres to her mother, and she was asked to execute a new deed to correct the mistake in the old, which was done, and the deed was duly executed June 2, 1884.

Doctor Mayers died in the year 1904. He and his wife, Mary L., lived together uninterruptedly from the time they married up until the date of his death. They removed to Texas a few years after the purchase of the Fort Smith property, the precise year of their removal not being disclosed in the record so far as we have observed, and property was acquired in the State of Texas, which, subsequent to the death of Doctor Mayers, was adjudged to be community property.

The property in controversy was carried on the tax books of Sebastian County, Arkansas, in the name of Mrs. Mayers, and she paid the taxes thereon continuously from the year 1874 until the date of her death.

The principles applicable to this case are so well settled that there can be no controversy as to the law of the case.

It is unnecessary to determine, as before stated, who purchased the property from Sweeney, whether Doctor Mayers or his wife. Nor need we inquire into the details as to whose money was used in making the purchase, for it is undisputed that Raphael M. Johnson conveyed the property to Mrs. Lark, then Mrs. Ayres, to hold the title as trustee, and that subsequently Mrs. Ayres conveyed the property to her mother, Mrs. Mayers, at the request of her father, as well as her mother. There can be no dispute about that, and the testimony of Mrs. Lark herself shows that her father knew of the execution of the conveyance to her mother. That deed was placed of record, as was the second deed executed in 1884 to correct the error in the first one. It is true that Mrs. Lark says that the understanding was, at the time Johnson made the deed to her, that she should convey it to her

father when requested, and that when she executed the deed to her mother, she thought she was conveying it to her father. But it is conceded that she was merely holding the title as trustee, and had no beneficial interest therein, and it was immaterial what she thought about it if, as a matter of fact, her father authorized the conveyance to her mother, or consented thereto. It is, as before stated, undisputed that Doctor Mayers knew that the property was conveyed to his wife and authorized it to be done, and he knew throughout the remainder of his life that the title was in his wife. She testified that he knew all about it and treated it as her property and acted for her under a power of attorney which she executed.

The case stands, then, regardless of the details of the original purchase, as one where the husband voluntarily conveys property to his wife, or causes it to be conveyed to her, and under those circumstances, even if he furnishes the money, there is a presumption that it is a gift.

In the similar case of *Womack* v. *Womack,* 73 Ark. 281, it was said:

"Conceding that Womack purchased the land, and paid for it, and had the title taken in name of his wife, it was absolutely her property. 'If a husband purchases property, and has it conveyed to his wife, or expends money in improving her property, the advances will be presumed to be gifts.'"

The cases in which that principle is announced are very numerous, and it is unnecessary to cite any more of them.

The plaintiffs in this case, therefore, upon the undisputed facts, started with the presumption against them that the conveyance to Mrs. Mayers was a gift from their father, even if his money was used in the purchase, and the only remaining question is whether or not they have overcome that presumption with sufficient proof to justify the court in declaring that it was not a gift, and that a trust resulted.

Our opinion is that they have not adduced sufficient proof for that purpose, and that the chancellor erred in declaring a resulting trust. There is, in fact, little, if any, proof of a substantial character, in the record tending to show that Doctor Mayers ever treated the property other than as being owned by his wife. All the proof adduced tends the other way. Of course, there is an attempt on the part of the plaintiffs to discredit the testimony adduced by defendants in support of their claim that Doctor Mayers, by affirmative acts, showed that he treated the property as his wife's; but the plaintiffs offer little, if any, testimony themselves, which has any substantial effect in showing that Doctor Mayers intended the conveyance otherwise than as vesting the title absolutely in his wife. The only thing seriously urged as showing a claim on the part of Doctor Mayers to ownership of the property is an agreement in the record with reference to a will that he is said to have executed. Neither of the parties introduced any such instrument, but in the examination of Mrs. Lark, it developed that after the death of Doctor Mayers, Mrs. Mayers had proposed for probate in Texas a will purporting to be that of Doctor Mayers, but that she (Mrs. Lark) produced a later will revoking the former one. These instruments are referred to as being brought out in certain litigation in Texas concerning the property there, and the record shows a concession on the part of the defendants that such a will was in existence whereby Doctor Mayers devised whatever reversionary interest he might have in certain mortgaged property.

The record does not show what property was meant, as the wills were not produced and copied in the record, but the inference is, from the way in which the matter appears in the record, that it referred to the mortgaged property in Texas. Be that as it may, however, we are of the opinion that mere execution of a will by Doctor Mayers referring in that vague way to whatever interest he might have was insufficient to rebut the presumption of a voluntary gift on his part.

The rule is that in order to establish a resulting trust, the evidence must be "full, clear and convincing." *Johnson* v. *Richardson*, 44 Ark. 365.

Instead of the proof in this case being convincing that a trust was intended, it appears to us that the weight of the evidence is against the existence of any trust or any intention to create one. The decree must, therefore, be reversed, and the cause is remanded with directions to dismiss the complaint of the plaintiffs for want of equity.

The allowance by the court of fees to the attorneys for plaintiffs, of course, falls with the reversal of the decree in favor of plaintiffs and the decree allowing such fees is also reversed.