## MANN v. MANN.

### Opinion delivered April 21, 1924.

1. TRUSTS—SUFFICIENCY OF EVIDENCE.—In order to establish a resulting trust, the evidence must be full, clear and convincing.

2. HUSBAND AND WIFE—CONVEYANCE TO WIFE.—Where a husband purchases land and procures the deed to be made to his wife, the presumption is that he intended it as a gift, and that a trust did not result in his favor; but this presumption may be rebutted by evidence of facts, antecedent to or contemporaneous with the conveyance, showing the husband's intention to have been that the wife should hold as trustee, and not for her own benefit.

3. TRUSTS—EVIDENCE OF RESULTING TRUST.—Evidence *held* to establish that a husband sent his money to his wife to invest for him and not as a gift to her.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*John E. Miller,* for appellant.

1. It is admitted that a resulting trust may be established by parol testimony, but that testimony, or proof, must be full, clear and convincing. The testimony adduced by the appellee falls far short of the requirement of the law. There is nothing to rebut the presumption which the law created when the title to the property was taken in the name of the wife. 104 Ark. 42; Kirby's Digest, § 3666; 101 Ark. 451; 103 Ark. 273; 113 Ark. 207; 127 Ark. 302; 75 Ark. 446; 156 Ark. 403; 158 Ark. 4.

2. It is manifest from the evidence that appellee did not furnish all of the money that was used by the wife in the purchase of the lands. The fact that he furnished part of the money was not sufficient to justify the decree. 73 Ark. 281; 89 Ark. 579; 100 Ark. 370; and cases *supra*.

3. The act of appellee in giving the money to his wife in the manner he says he did constituted a gift *inter vivos.* 140 Ark. 430.

*Brundidge & Neelly,* for appellee.

1. The presumption in favor of an advancement or gift does not arise where the husband furnishes the

money with which his wife buys property, he being absent from home, and thinking the title was taken in his own name, when in fact it was taken in the wife's name; but, in any event, the evidence is amply sufficient to show that in this case a resulting trust arose in favor of the appellee. 117 Ark. 575; 156 Ark. 407; 38 Okla. 263.

2. A gift *inter vivos* is one of intention purely. It is patent here that there was no intention on the part of appellee that all his money and property should belong absolutely to his wife, and that he was to have no interest therein. Having his pay checks sent to his wife for the purpose of paying household expenses and holding the other subject to his demands did not evidence any such intention. 12 R. C. L. 949.

HUMPHREYS, J. Appellee instituted this suit in the chancery court of White County against appellant to have the entire title to a "railroad forty" acre tract of land, and a two-thirds undivided interest in the James H. Joyce homestead of one hundred and fifty-one and sixty-one one-hundredths acres and the personal property situated on said land decreed to him. It was alleged in the bill that appellee had furnished the purchase money to his wife with which to buy the lands and personal property, and supposed the deed and title thereto was in himself until after the death of his wife, which occurred on February 28, 1922.

Appellant filed an answer, denying the material allegations of the bill, and, by way of cross-bill, alleging that he had made substantial improvements upon the "railroad forty," for the value of which he asked judgment in the event the court decreed the land to appellee.

The cause was submitted to the court upon the pleadings and testimony introduced by the respective parties, which resulted in a decree in favor of appellee for an undivided two-thirds interest in the Joyce tract and the entire "railroad forty," with a lien on the latter tract in favor of appellant in the sum of $585.50 for improvements made thereon; also a decree in favor of

appellee for the household and kitchen furniture orig-
inally purchased by himself and wife, and a wagon, two
cows and calves, and farming tools at the family resi-
dence; and in favor of appellant for the gray horse and
the other personal property at the family residence situ-
ated on the Joyce tract of land. The "railroad forty"
was ordered sold by a commissioner appointed for that
purpose, to satisfy the lien for same, in case the amount
adjudged against it should not be paid. It was adjudged
that the Joyce tract of land could be divided in kind, and
commissioners were appointed for that purpose. An
appeal was duly prosecuted to this court from the decree.

Appellee and appellant's mother, Maggie Joyce,
intermarried in 1898. Appellant was about two years
old at the time. Maggie Joyce had no money. She and
her two sisters, Beatrice Green and Willie Smith, owned
an undivided one-third interest each in the home place
of their father, consisting of one hundred fifty-one and
sixty-one one-hundredths acres, subject to the dower and
homestead rights of their mother. Soon after the mar-
riage, appellee was employed by the L. & N. Railroad.
His position required him to remain away from home
most of the time, so he boarded his wife and the child with
her mother until Mrs. Joyce died, and afterwards with
D. M. Green, who had married his wife's sister, Beatrice,
and who continued to reside at the Joyce homestead
after their marriage. The Smiths were not satisfied that
Green should remain on the property under the existing
conditions, so, on November 6, 1899, appellee bought
Willie Smith's undivided one-third interest therein, and
the deed was made to his wife, Maggie Mann. Later
appellee furnished the money to buy a farm near town,
so appellant could go to school. The title to this farm was
taken in the name of his wife. They afterwards sold the
farm and moved back to the Joyce homestead, with the
understanding that either Green or appellee would buy
out the interest of the other. In the spring of 1911
Beatrice Green died, and her undivided one-third interest

in the Joyce homestead was sold under an order of court. Appellee agreed to buy it, so D. M. Green procured the order of sale, and, when sold under the order, the conveyance was made to appellee's wife. On March 31, 1915, appellee purchased the "railroad forty," and the deed to that land was also conveyed to his wife. After working about fifteen months for the railroad, appellee procured employment from the United States Government, and this employment also prevented him from staying at home much of the time. He testified that he spent about one-third of his time at home, and others testified that he was at home very little of the time. While working away from home he sent his pay-checks directly to his wife, who deposited the proceeds thereof in the People's Bank in her own name. When appellee needed any money, he would write to his wife, if she was at home, for such money as he needed. If she happened to be away from home, he would write directly to the bank and get the money. With the exception of a year or two, appellant remained upon the farm with his mother and helped cultivate the land and keep up the repairs. He kept the proceeds from the cotton raised upon the land for spending money, but the other products were used for feeding the stock and in supporting the family. Such help as was needed was employed and paid for out of the bank account, which was replenished from time to time by the proceeds of appellee's pay-checks. The salary of appellee was their chief source of income. There is practically no dispute in the testimony that the house was originally furnished and that the farms, farm implements, and stock were all purchased with the proceeds of the pay-checks. Appellee's wife expended a portion of the money for their living and in the management of the farms. Appellee purchased the farm implements and stock from Green at the time he purchased Mrs. Green's interest therein. The furniture was purchased out of the bank account from time to time. When the lands were bought, appellee negotiated the deals and

furnished the money with which to pay for them. Appellee paid little attention to the management of the farm, but, when at home, looked after and controlled the affairs thereon to some extent. The deed from Beatrice Green to appellee's wife was not introduced in evidence. The other deeds were. These deeds came into possession of appellant after the death of his mother, and were filed for record by him. They had not been recorded before her death. After the institution of this suit, appellant obtained quitclaim deeds to the Joyce tract from the Greens and Smiths. He told Mr. Green that he wanted a quitclaim deed to evidence the fact that his mother had bought the land from her sisters. When appellee's wife died, he drew out the money in the bank and collected the rent which was due on the farms, without objection on the part of appellant. Appellant explained that he made no objection because he did not want to start any trouble. In December following, however, appellant asserted ownership to the property, whereupon appellee commenced this suit. Appellee testified positively that he had no intention of making his wife a gift of the checks, the proceeds therefrom, or the lands; that he sent the money to her to manage and invest for him; that he made no objection to her taking the title to the lands in her own name, because his purpose was to establish a home for them in their old age and to leave something for appellant when they died. He explained that he was at home so little of his time that he made no objection to the way the deeds were made or the way in which the farm was managed.

Mrs. A. B. Canfield testified that, on one occasion, appellee made the following statement to her: "I want to leave them both in good circumstances. If I go, I want to leave them in good circumstances. If she was to go, then everything would be his. For myself, I have a good job, and will always have a living out of the government after I am too old to work."

Appellee testified in rebuttal as follows: "I said to Mrs. Canfield and to every one else that I want a home and some place to come and rest when I get thirty days off from the government. I had a home for the whole 'push'."

In aid of the contention for a reversal of the decree, appellant invokes the two following rules of law:

"In order to establish a resulting trust, the evidence must be full, clear, and convincing." *Johnson* v. *Richardson,* 44 Ark. 365; *Tillar* v. *Henry,* 75 Ark. 446; *Mayers* v. *Lark,* 113 Ark. 207; *Doyle* v. *Davis,* 127 Ark. 302; *Murchison* v. *Murchison,* 156 Ark. 403.

"Where a husband purchases land and procures the deed to be made to his wife, the presumption is that he intended it as a gift, and a trust does not result in his favor. This presumption may be rebutted by evidence of facts showing the husband's intention to have been that his wife should take the land as trustee and not for her own benefit; but such facts must have existed or taken place antecedently or contemporaneously with the conveyance, or so soon thereafter as to form part of the transaction." *Wood* v. *Wood,* 100 Ark. 370; *Harbour* v. *Harbour,* 103 Ark. 273; *Mayers* v. *Lark,* 113 Ark. 207.

It is argued that the testimony introduced by appellee does not meet the requirements of these rules. We cannot agree with learned counsel in this contention. After a very careful reading of the testimony, we are convinced that appellee did not intend to make his wife a present of all his earnings or the lands conveyed to her. He testified positively that he sent his money to her to manage and invest because he could not be at home for much of his time, and that his purpose in sending her his pay-checks was to provide a home for them in their old age and to leave something for the boy when they were gone. Appellee is the only one in a position to actually know the intention of himself and wife in purchasing the property in question, and, for this reason, much weight should be attached to his positive evidence. It is apparent, from circumstances cropping out in the

testimony, that appellee retained dominion over his bank account, except in so far as it was expended in the support of the family. Whenever it came to buying property, he was consulted, and his permission was obtained to purchase same. It is also apparent that he assumed the management and control of the farm when he happened to be at home. He allowed appellant the proceeds of the cotton for spending money, but exacted that the other products be used to feed the stock and for the support of the family. When his wife died, appellee took charge of the bank account, and collected rents on the farm, amounting to over $200, without objection of appellant. The careless way in which the deeds were handled is a circumstance tending to show that neither appellee nor his wife expected them to be used as an index of their intentions. One of the deeds was lost, and the others were not recorded until after the death of Mrs. Mann. Another potent circumstance in support of a resulting trust is that it does not comport with reason that one will denude himself of all his earnings during a long period of years without making some provision for old age. We think appellee's positive testimony to the effect that his purpose was to make provision for himself and wife in their old age and to leave the boy something when they died, rings true to nature.

The presumption arising out of the form of the conveyances, that appellee intended to give the lands to his wife, is rebutted by the testimony under the full, clear, and convincing rule of evidence. Our interpretation of the testimony in its entirety is that appellee sent his money to his wife to manage and invest for him, and that the investments she made were in trust for him.

In view of these conclusions, the decree is affirmed.