CRAIN v. KEENAN, ET AL.

4-9391 236 S. W. 2d 731

Opinion delivered February 19, 1951.

Rehearing denied March 19, 1951.

R. M. *Priddy* and *Caviness & George,* for appellant.

*Scott & Goodier* and *O. J. Fergeson,* for appellees.

GEORGE ROSE SMITH, J. This is a suit by J. H. Crain to enforce an oral contract by which the appellees, Dan Keenan and his son Robert, agreed to buy for Crain a farm in Yell County. According to Crain, the Keenans were to pay not more than $15,000 for the land and take title in their own names. Crain was then to pay them $4,000, plus $500 for their expenses, and the Keenans were to deed the land to Crain and take a mortgage for the rest of the purchase price, payable in five years with 6% interest. The Keenans did buy the farm, but they insist that the purchase was for their own benefit and that they then rented the land to Crain. The chancellor held that such a contract, even if made, would be

unenforceable under the statute of frauds. The complaint was therefore dismissed.

The chancellor was in error in thinking the contract to be within the statute of frauds. By its terms the statute does not apply to resulting trusts. Ark. Stats. 1947, § 38-107. Although the complaint treats the transaction as an equitable mortgage the proof establishes a resulting trust. "Where a transfer of property is made to one person and the purchase price is advanced by him as a loan to another, a resulting trust arises in favor of the latter, but the transferee can hold the property as security for the loan. . . . In the situation stated in this Section the result is the same as though the transferee first lent the amount of the purchase price to the borrower and the borrower then paid the amount so borrowed to the vendor and the conveyance was then made by the vendor to the lender." Rest., Trusts, § 448.

A more difficult question is whether the appellant's proof is sufficient to establish the trust. In dozens of cases we have held that the evidence to engraft a resulting trust upon a deed absolute in form must be clear and convincing. Rest., Trusts; Ark. Anno., § 458. But here the record is so replete with circumstances corroborative of Crain's testimony that we think his heavy burden of proof has been met.

Crain first became interested in buying the farm in November of 1948. He arranged for J. M. Barker, a banker of Atkins, to buy the land in his own name for as much as $14,000 and then transfer it to Crain for $4,000 in cash and a mortgage on the farm and on Crain's home, the debt to be payable in five years with 6% interest. It will be seen that this arrangement was quite similar to that now relied on by Crain.

Appellant testified that in December of 1948 the Keenans offered to buy the land for him on the terms that we have set out, saying that they might be able to get it a little cheaper than Barker could. Their interest in the matter apparently lay in the fact that they own a cotton gin and regarded Crain as a potential customer.

Crain then visited Barker and terminated the latter's agency to buy the land. Barker corroborates Crain both as to the original agreement and as to its termination. L. C. Hastons testified that he was present when the Crain-Keenan contract was made, and he too corroborates Crain.

There is much other testimony to support the existence of the oral agreement. Four apparently disinterested witnesses quoted Dan Keenan as having said that Crain had bought the land or that the Keenans had lent him the money to buy it. Crain took possession in January and did very extensive work in destroying Johnson grass, uprooting stumps, and otherwise preparing for cultivation. Crain estimated these expenses at $1,500, which he says he would not have spent as a mere tenant. He also paid in full for the poison used on the crops, though a tenant would have charged a fourth of the expense to his landlord.

The tenant who had farmed the land in 1948 as a tenant from year to year had not been given notice to vacate. Crain says that the Keenans paid this former tenant $300 to release the land, and Crain reimbursed them. Crain's canceled check for this $300 was introduced in evidence. After Crain took possession he leased part of the land to his son for five years, which he would hardly have done as a tenant. The son used the lease as a basis for obtaining a government loan to repay the Keenans for a tractor which they had bought for the son. Whether the Keenans knew about the five-year lease is a disputed matter, but Crain testified that they did.

In May of 1949 Dan Keenan obtained from Crain a right-of-way across part of the farm for a levee district. Keenan says that this deed was merely to protect the district against crop damage, but the instrument says nothing about crops; it purports to grant a perpetual easement across the land. Robert Keenan had been a commissioner of the district for three years and had never heard of the district's obtaining an easement from any other tenant. The Keenans admit that they them-

selves did not execute a deed to the district for the right-of-way.

This testimony is not undisputed, but it need not be. *Murchison* v. *Murchison*, 156 Ark. 403, 246 S. W. 499. Both the Keenans deny that the contract was made, and their testimony is not entirely without support. They undoubtedly exercised considerable supervision over the farm in 1949, even to the extent of directing that two small houses and a barn be taken down and that another house be constructed. They also collected some rent from a tenant, though Crain says that he was to receive credit for this collection. Even though the Keenans' conduct to some extent indicates a claim of ownership, it must be remembered that title was still in them, the execution of the oral contract having been delayed on account of certain defects in the title that had to be cured. Nor is it without significance that in this interim a change in the levee had materially increased the value of the farm. On the whole we do not think that the appellees' testimony seriously weakens the strong case made by the appellant.

There is also a dispute as to the consideration paid by the Keenans for the land. Their deed recited a payment of $12,000, and the revenue stamps were at first calculated on that basis. But the Keenans testified that they paid $14,000, and the agent for the seller corroborated their statement. They introduced a receipt showing that $14,000 was paid. We all know that deeds often do not show the true consideration, and here the appellees have satisfactorily shown that $14,000 was paid.

Reversed and remanded for further proceedings.