NEWBERRY *v.* NEWBERRY.

4-9417                                   237 S. W. 2d 477

Opinion delivered March 19, 1951.

*W. J. Cotton,* for appellant.

*Merle Shouse,* for appellee.

GRIFFIN SMITH, Chief Justice. August 26, 1949, John F. Newberry executed and delivered to his son, Woodrow, a deed to 183.19 acres. The complaint resulting in this appeal was filed by another son, Burk, but the decree was based on a separate action by Woodrow asking that his title be quieted.

In 1915 Alexander Newberry, for a recited consideration of $100, sold to *his* son, John F. Newberry, four acres. It is a part of sixteen and a fifth acres claimed by Burk, who says that *his* father, John F. Newberry, held the property in trust and had fraudulently disposed of it when the August, 1949, deed was delivered. In the alternative Burk, in his original pleading, asked that he have judgment for $900 with interest from December 13, 1924, to compensate the 46.62 acres he purchased from his grandfather on that date.

Included in the 46.62 acres were the 16.20 acres Burk says were to be held in trust, but in particularizing he asserted that "four of this were deeded by me to John F. Newberry prior to this [time]."

A. A. Newberry—Burk and Woodrow's brother—intervened, but it is conceded that Burk and Woodrow are the interested parties.

Whether Burk deeded four acres to his father (as he asserted in his complaint of October 12, 1949) appears doubtful. The deed from Alexander Newberry to John F. is in the record. Some of the witnesses spoke of the remaining land as twelve acres, plus a fraction.

In a deposition from which the Chancellor could have found that the witness had a clear understanding of his

business affairs and a comprehensive grasp of his relationship to the contending parties, John F. Newberry (then between 73 and 74 years of age) testified that in 1924 he and Burk "got in a swap about some lands." John F. had previously acquired 46 acres and Burk was buying the Alexander Newberry home place, containing 140 acres. It is conceded that Burk paid for this land; but, said John F., Burk wanted the 46 acres I had and I wanted [the particular 12 and a fraction acres], so it was agreed that the exchange should be made, "just like swapping horses."

Responsive to this agreement Alexander Newberry executed to John F. his deed to 16.20 acres, dated December 1, 1924. John F.'s deed to the 46 acres is not in the record, but Burk testified that he took this property. He was asked: "What did you give your father for the 46 and a fraction acres he deeded to you?" A. "We divided the land." Q. "In other words, you took the 46 acres from him and he took the 16 acres from your grandfather—is that what you are trying to tell the court?" A. "Yes, sir." Q. "I believe you stated that your father had also purchased from your grandfather four and a fraction acres prior to this time: is that correct?" A. "Absolutely." Burk then stated that he did not think the smaller tract was included in the 16.20 acres.

On redirect examination Burk testified it was his understanding that the 46 acres were given to him for the *use* of the 16.20. A little later he said that the deed from his father had absolutely nothing to do with the return of the 16.20 acres.

There was testimony pro and con regarding Burk's contention that his father promised to surrender the acreage when he was through with it. Indeed, it might be said that a preponderance of the evidence supports Burk's insistence that his father, from time to time, had either expressed an intention to give him the land, or to "make things right with him," thereby establishing in Burk's mind a conviction that he would eventually become the beneficiary.

A brother-in-law of Woodrow and Burk testified that he had lent money to his father-in-law and that the land was mortgaged to secure this debt, an obligation since paid. One of John F.'s daughters testified she had heard Burk say that he and his father swapped lands, "and I did not at any time hear Burk claim he was to get the twelve acres when Father was through with it—not until Dad went to fix up his business [by deeding the property] to Woodrow." Another daughter was at home "when they traded" and did not hear anything except that the lands had been exchanged. In mentioning the actual transaction another witness (Earl Sims, John F.'s son-in-law) testified: "Burk told me he had swapped lands—had exchanged the bottom below the barn for the other land down there. Burk built a home on the 46 acres and had been living there."

The Chancellor found that John F. Newberry was mentally competent when he executed and delivered the deed of August 26, 1949, that he was not coerced in the sense that the transaction was not his voluntary act, and that when Burk allowed his grandfather to convey 16.20 acres directly to John F. there was an unconditional exchange between father and son whereby Burk took from the 140 acres the tract deeded to John F. and used it to acquire 46 acres his father then owned. Oral testimony is competent to show that the actual consideration for realty is different from the recited consideration, or that it has not been paid. *Sewell* v. *Harkey,* 206 Ark. 24, at p. 27, 174 S. W. 2d 113. A resulting trust may be shown by parol testimony, but the evidence must be clear, cogent, and convincing. *Harbour* v. *Harbour,* 207 Ark. 551, 181 S. W. 2d 805. Expressed differently, the evidence must be "clear, satisfactory, and convincing," *Murchison* v. *Murchison,* 156 Ark. 403, 246 S. W. 499. But the requirement is not that the testimony be undisputed.

Tested by these rules there is no basis for overturning the decree.

Affirmed.