PAYNE *v.* BOX.

5-1968                                          329 S. W. 2d 181

Opinion delivered November 30, 1959.

*Van Johnson,* for appellant.

*Robinson & Robinson,* for appellee.

PAUL WARD, Associate Justice.   The questions on
this appeal are whether oral evidence is admissible and
whether it is sufficient to establish a resulting trust.
Appellant, A. G. Payne, filed a complaint in the Circuit
Court against appellees, Homer B. Box and Pearl Box,
his wife, to obtain possession of Lots 9, 10, 11, and 12,
Block 8, of Norwood Subdivision to the town of Stamps,
alleging that he was the holder of the record title to
said property.   Appellees answered and alleged in sub-
stance that the land belonged to them for the reason
that appellant held said property in trust for them.   They
asked that appellant's complaint be dismissed or in the
alternative they asked that the cause of action be trans-
ferred to a court of equity.   Pursuant to the above, the
Circuit Court, finding that appellees were relying on
equitable grounds for relief, transferred the matter to
Chancery Court.

A brief factual statement will help to understand
the issues hereafter discussed.   Prior to the year 1950
Charlie Siebert was the owner of subject property.   In
that year he died testate leaving the property to certain

relatives. Appellees were living on said property at the time of the death of Siebert. On or about the 21st day of February 1950 appellees apparently entered into negotiations with Siebert's devisees to purchase the property for the sum of $2,000.00. It seems, however, that appellees did not have the money to pay the purchase price but were going to borrow it from some source, possibly a bank. It was appellees' contention that at this point appellant offered to lend them the $2,000.00 with which to purchase the property. It was appellees' further contention that it was understood that, in order to secure appellant, the property was to be deeded to appellant and he was to hold same in trust for them and convey it to them when they had paid the purchase price. It is further contended by appellees that they had paid the purchase price and were now entitled to have appellant execute a deed to them conveying the subject property.

After a full hearing the Chancery Court sustained appellees' contentions, dismissing appellant's complaint, divesting title to subject property out of appellant and vesting title thereto in appellees upon payment of 6% interest on the $2,000.00 and upon payment of taxes and certain insurance premiums theretofore paid by appellant.

Upon appeal appellant seeks a reversal on two grounds, namely: One, recovery of appellees is barred by the Statute of Frauds; and, Two, the Court erred in holding that the evidence was sufficiently clear and convincing to establish a resulting trust.

*One.* Conceding for the present that appellees' evidence is sufficiently clear and convincing to establish a resulting trust, appellant must fail on his contention that the action is barred by the Statute of Frauds under the authority of *Crain* v. *Keenan, et al,* 218 Ark. 375, 236 S. W. 2d 731. In the cited case appellant sought to enforce an oral contract by which appellees agreed to buy a farm for $15,000.00, taking title in their own names and conveying said title to appellant upon payment of the purchase price. Appellees bought the farm but insisted that the purchase was for their own benefit and

they only rented the land to Crain who had moved on it. The trial court held that such contract, even if made, would be unenforceable under the Statute of Frauds and appellant's case was dismissed. Upon appeal the cause was reversed upon that point. This court stated: "The Chancellor was in error in thinking the contract to be within the statute of frauds. By its terms the statute does not apply to resulting trusts. Ark. Stats. 1947, Section 38-107. Although the complaint treats the transaction as an equitable mortgage the proof establishes a resulting trust". The court then quoted with approval from Rest., Trusts, Section 448 as follows: " 'Where a transfer of property is made to one person and the purchase price is advanced by him as a loan to another, a resulting trust arises in favor of the latter, but the transferee can hold the property as security for the loan . . . In the situation stated in this Section the result is the same as though the transferee first lent the amount of the purchase price to the borrower and the borrower then paid the amount so borrowed to the vendor and the conveyance was then made by the vendor to the lender' ''.

Applying the rule above stated to the brief statement of facts in the case under consideration the situation is the same as if appellees had borrowed the $2,000.00 from appellant and then gave him back the money to go buy the subject property in his name with the understanding that title to the property would be conveyed to appellees when appellant was reimbursed for the borrowed money.

*Two.* The next question for decision is whether the evidence is sufficiently clear and convincing in this case to establish a resulting trust. The trial judge found that it was, and, after a careful survey of the records and the facts and circumstances deducible therefrom, we are unable to say that the trial court was wrong. It is, therefore, in order to set out in some detail the material portions of the testimony.

Appellant, a resident of Lafayette County, 55 years of age, and engaged in the house moving business, testified that he purchased the subject property from the wife and heirs (or devisees) of Charley Siebert, deceased,

and paid therefor the sum of $2,000.00; that he rented the subject property for $25.00 per month to appellees who were living on the property at the time he bought it; that since that time he has paid all the taxes and insurance on the property. On cross-examination he stated that the grantors talked to his brother about selling the property; that he met them at the lawyer's office, that they wanted to get rid of the property and he agreed to buy it for $2,000.00; that after they made the deal they met in Mr. Boulware's office and closed the deal, and he made the deed out to me; he didn't remember whether he saw appellees prior to making the purchase but he did talk to them after he had bought it; that he didn't know how much appellees had paid him in the way of rent but appellees never told him that they wanted to settle up and have him execute a deed; and, that he never knew that appellees claimed any interest until this suit was brought.

Appellee, Homer Box, testified that he was renting the property from Siebert at the time of his death—that the building was what he called a garage or living quarters; that after Mr. Siebert was buried he and his wife were talking to the heirs who wanted to sell the property but didn't know what it was worth; that at their suggestion Judge LeCroy came over from El Dorado and then he made them an offer of $2,000.00 which the judge thought was a fair price; that the heirs went off and later told me that they had accepted the offer; that appellant was there at the time; that he told the heirs he had to go to the bank to make arrangements for the money, but appellant stated that he would lend him the money; that appellant got in his car with the heirs and Mr. Adams and went to town and when they returned appellant stated that he wanted to get the deed in his name. stating that when the money was paid back to him he would make us (appellees) a deed which was all right with us; that appellant (or his brother) said that they would not try to beat us, that we had been friends, and that if we paid them the $2,000.00 they would not give us any trouble; appellant stated we could pay the money back any way we wanted to and also stated that if I got

short on work they had a lot of trucks and would let me work some of it out in the shop; and that when they had paid the $2,000.00 back he went to see appellant and he said we had been renting the property and that he was not going to make us a deed. On cross-examination Box stated that when appellant agreed to lend him the $2,000.00 to buy the property he mentioned the matter of taxes to appellant and he said that he would go ahead and take care of that item. Box identified 66 out of 79 receipts which he had received for monthly payments and they were marked ''for house rent''; that he mentioned it to appellant several times and told him he didn't like it, and that appellant said ''Well, just give us $2,000.00 worth of them''; that after the heirs, Mr. Adams and appellant returned from Mr. Boulware's office they asked me if it was all right to put the deed in appellant's name; that from 1950 to 1956 the witness did not have a chance to say anything to appellant about it and that the first time he talked to him about it was when he had paid the $2,000.00 back; that he told appellant he had paid $2,000.00 and wanted a deed and appellant refused to give it to him.

Appellee, Mrs. Homer Box, testified to substantially the same things her husband, Mr. Box, had testified to. She stated that appellant said he would let them have the $2,000.00 to buy the property and would not require any interest; that her husband said he was willing to pay interest but appellant stated that he would let them pay it by the month like rent; that she and her husband made all the payments and never missed any payment until the full $2,000.00 was paid. Richard Wootin who lives in Stamps, Arkansas, and knew Siebert during his lifetime, stated that he was acquainted with the subject property and that he knew appellant; that he had heard the property was for sale and went up to where appellees lived; that when he got there the heirs stated that they had sold the property to Mr. Box; that appellant was there and stated that he was going to finance Mr. Box in buying it; that this all happened there under the shed in the shop; that appellant was present when it was announced that the property was going to be sold to Mr.

Box and he (appellant) voluntarily stated that he was going to help Box buy it. Ira Phillips who lives at Stamps and who knew all of the parties concerned, stated that he was present when the trade was made; that the heirs came in and told Mr. Box they had decided to let him have the property and that appellant was there; that Mr. Box said he would have to go to the bank and make arrangements for the $2,000.00 but appellant stated that it would not be necessary because he would let them have the $2,000.00, and; that appellant went away and later came back and stated that they were furnishing the money and asked about having the deed made out in his (appellant's) name. Marion May who apparently knew all of the parties concerned, stated that he knew appellees had bought the property and that he heard Homer Box say he would have to go to the bank to make arrangements to borrow the money; that when Mr. Box made that statement appellant said ''No, I have got the money, let me pay it for you'' and Homer Box said ''O. K.''

Frank Niedermeyer, Jr., an heir of Charlie Siebert, and one of the grantors in the deed to appellant gave a deposition in which he stated in substance: We sold the land on February 21, 1959 and Mr. and Mrs. Box offered us $2,000.00 which we agreed to accept; appellant was furnishing the money and appellees were to pay him back by the month; we intended to sell and did sell that property to appellees but we made the deed to appellant thinking we were helping to carry out an agreement whereby appellant would later deed the property to appellees when it was paid for; and, we never made any trade with appellant. Substantially the same testimony was given in a deposition made by Verna C. Niedermeyer who was also one of the grantors in the deed. These depositions were allowed to be introduced over the objection of appellant. Said objections were that it was an attempt to vary the terms of the written contract and that said testimony was barred by the statute of frauds. For the reasons set out in Paragraph ''One'' we hold that the testimony was competent.

It is apparent from the above that appellant relied almost entirely upon the statute of frauds for a defense, because, he made no attempt to deny the testimony given by appellees and their witnesses. Except for the statement of appellant that he purchased the property for himself there is no substantial testimony to contradict appellees' version of the transaction. In view of these facts and circumstances we think the findings of the Chancellor in favor of the appellees must be sustained and we cannot say such testimony and facts are not clear and convincing.

It follows, therefore, that the decree of the trial court must be, and it is hereby, affirmed.

Affirmed.